# In the United States District Court
# for the Southern District of Texas
# Houston Division

| | | |
|---|---|---|
| **CASANDRA SALCIDO, et al,** | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 4:15-cv-02155 |
| v. | § | |
| | § | **Jury Demand** |
| **HARRIS COUNTY, TEXAS, et al,** | § | |
| Defendants. | § | |
| | § | |

## DEFENDANTS' MOTION TO STRIKE EXHIBITS & PLAINTIFFS' COUNSEL'S AFFIDAVIT

To the Honorable Sim Lake, United States District Judge:

Defendants Harris County and Individual Officers moves to strike exhibits and Plaintiffs' counsel's affidavit attached as evidence to Plaintiffs' Response to Harris County's Motion for Summary Judgment. [Doc. 175] The exhibits at issue are Exhibits 2A, 3, and 15 and references thereto in Plaintiff's response to Harris County's motion for summary judgment and an affidavit by Plaintiffs' attorney Benjamin Major. Harris County would respectfully show the Court the following:

## SUMMARY OF THE ARGUMENT

The Court should strike certain exhibits attached as evidence to Plaintiffs' Response to Harris County's Amended Motion for Summary Judgment because they are not competent summary judgment evidence. First, the Court should strike Exhibit 2A – the cell extraction video that Plaintiffs' counsel modified to include inaccurate captions. This captioned video is not evidence. It was created at the direction of the lawyers, it will distract attention from the visual importance of the video itself, and it was never produced to Defendants. Second, the Court should strike Exhibit 3 – a 2009 letter from the DOJ to Harris County – because it is not trustworthy and irrelevant. Third, the Court should strike Exhibit 15 – a memorandum from a consultant hired by Harris County after Lucas' death – because it is inadmissible hearsay and evidence

of subsequent remedial measures which are not admissible under Federal Rule of Evidence 407. Finally, Plaintiffs' lawyer's affidavit that accompanies their filing should be stricken because it is not a proper business records affidavit.

**NATURE & STAGE OF THE PROCEEDING**

Plaintiffs filed this lawsuit on July 28, 2015, asserting section 1983 and ADA claims against Defendants arising out of the death of Kenneth Lucas on February 17, 2014. Doc. 1. *See also* Doc. 77 (Fourth Amended (live) Complaint). On February 2, 2018, Harris County moved for summary judgment on all of Plaintiffs' claims against it. Doc. 152. All Individual Defendants likewise moved for summary judgment. *See* Docs. 145, 146, 147, 148, & 150. Plaintiffs responded on April 9, 2018, and attached numerous exhibits as evidence. Doc. 175.

Harris County objects to and moves to strike several of Plaintiffs' irrelevant, prejudicial, inadmissible exhibits.

**ARGUMENT & AUTHORITIES**

Harris County objects to and moves to strike Plaintiffs' counsel's affidavit in support of Plaintiffs' response and Plaintiffs' Exhibits 2A, 3, and 15. Docs. 175-1, 175-4, 175-6, & 175-18.

**I.      The Court should strike irrelevant, prejudicial Plaintiffs' captioned video**

Although Plaintiffs attached the original, unedited cell extraction video, they did not refer to it in their response to the summary judgment motions, but rather refer to an edited video, created at the lawyers' direction, with captions of the words and utterances of those persons being filmed. This captioned video is not evidence and is not admissible – the captions, although allegedly prepared by a "video editing firm," are inaccurate, misleading and prejudicial. *See* Doc. 175-1 at p. 2.

The captioned video is not proper evidence. Plaintiffs' attorneys manufactured the evidence by adding captions themselves. *See* Doc. 175-1 at p. 2 ¶ 5. The captions force the viewer to read what is being said in the video (often inaccurately) and takes the focus off what happened. The captions are a clear distraction. The viewer (here, the Court) needs to experience the incident as the officers did without Plaintiffs' attorneys' improper emphasis on the words being spoken (again, often inaccurately). The words do not tell the viewer what is happening in the video and, thus, improperly emphasizes what is said instead of what is seen. If a person is reading the words, they cannot simultaneously watch the action in the video.

Moreover, the captions are inaccurate and, therefore, misleading. For example, at 1:32 to 1:38 minutes in Plaintiffs' captioned video, Lt. Anderson can be heard giving instructions to the extraction team, but Plaintiffs' captions omitted these instructions. At 2:25 to 2:28, an officer can be heard giving instructions to Kenneth Lucas, but again the captions omit these instructions entirely. At 3:41 to 3:55, Deputy Gordon is heard in the video telling Lucas at least four times to "Pass it to me" referring to the large, metal smoke detector, but Plaintiffs' captioning indicates Deputy Gordon only gave his orders three times. Likewise, at 4:14 to 4:30, Deputy Gordon orders Lucas to "Pass [the smoke detector] to me" at least six times, but Plaintiffs' captions misrepresent the order was given only four times. The misrepresentations in Plaintiffs' captioned video are highly prejudicial to Defendants particularly where Plaintiffs dispute Lucas was repeatedly ordered to give up the large, metal smoke detector he had fashioned into a makeshift weapon.[1] And these are just a few examples of the repeated inaccuracies in Plaintiffs' captioning.

---

[1] Plaintiffs state, "Though Defendants repeatedly cite the '23 orders' Defendant Gordon gave to Kenneth to surrender, they conveniently ignore that those *alleged* orders all take place in a span of just over a minute and a half." Doc. 175 at p. 49 of 168 (emphasis added).

3

Plaintiffs attach no certification swearing to the accuracy of the captions, which are not accurate as discussed above. Plaintiffs' captions misstate or omit some statements altogether while at all times prioritizing Lucas's statements over statements made by others. This careless captioning is prejudicial to Defendants and is not the best evidence of the incident at bar.

Finally, Plaintiffs never produced the captioned version of their video to Defendants and they are barred from using it to support their response to Defendants' motions for summary judgment. Federal Rule of Civil Procedure 26 requires parties to produce "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." FED. R. CIV. P. 26(a)(1)(A)(ii). A party who fails to provide information required by Rule 26(a) "is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). *See also Olivarez v. GEO Grp., Inc.*, 844 F.3d 200, 204–06 (5th Cir. 2016).

Plaintiffs do not use the video solely for impeachment and their failure to disclose the captioned video was not substantially justified or harmless. Plaintiffs rely solely on their own captioned version of the video (Exhibit 2A) without ever citing the non-captioned video (Exhibit 2B). By Defendants' count, Plaintiffs cited the captioned video 90 times in their 505 footnotes, showing significant reliance on the captioned video that goes far beyond impeachment purposes. Indeed, the original, uncaptioned video is the best evidence of the incident and, to the extent Plaintiffs' factual assertions contradict the video, this Court must "view[] the facts in the light depicted by the videotape," not by Plaintiffs' contrary assertions. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

The original, uncaptioned video speaks for itself, and the Court does not need Plaintiffs' manufactured evidence to explain what is on the video. Defendants object

4

to Plaintiffs' Exhibit 2A containing the captioned video and references thereto in Plaintiffs' response to Defendants' motions for summary judgment, and respectfully request the Court strike exhibit 2A and references to it.

## II.     The Court should strike the irrelevant 2009 DOJ Findings Letter

Harris County objects to Plaintiffs' Exhibit 3 and moves to strike it from the record of this case. *See* Doc. 175-6. The sources of information and other circumstances surrounding the Department of Justice's ("DOJ") June 4, 2009 Findings Letter indicate a lack of trustworthiness. Defendants attach Harris County's August 24, 2009 response to the DOJ's Findings Letter as Exhibit 1.

Although public agency reports containing factual findings resulting from an investigation are ordinarily not excluded by the hearsay rule, such reports are inadmissible if they are untrustworthy. *See* Fed. R. Evid. 803(8)(B); *Moss v. Ole S. Real Estate, Inc.*, 933 F.2d 1300, 1305 (5th Cir. 1991). As the Court noted in *King Fisher Marine Service, Inc. v. M/V Socol 2*, No. CIV. A. H-00-2439, 2001 WL 1911437, at *4 (S.D. Tex. 2001), a court must look to reliability rather than credibility in determining whether a record or report is trustworthy. Reliability "looks to the procedures employed in compiling the record or report". *Id.* Stated differently, "reliability focuses on the methodology behind the report". *Moss*, 933 F.2d at 1308.

Four factors are helpful in determining the trustworthiness of a record or report: "(1) the timeliness of the investigation; (2) the special skill or expertise of the official; (3) whether a hearing was held and at what level; and (4) possible motivational problems as in *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943)." *See Moss*, 933 F.2d at 1305.[2] Rule 803(8) "is premised on the

---

[2]     The Supreme Court has described the fourth factor as "possible bias when reports are prepared with a view to possible litigation". *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167 n.11 (1988). The DOJ Findings Letter contains a threat of litigation against Harris County if the Department's concerns are not resolved. *See* Doc. 175-6 at p. 25 (DOJ Findings Letter attached to Plaintiffs' response).

assumption that public officials perform their duties properly without motive or interest other than to submit accurate and fair reports." *Id.* (quoting *Bradford Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 805 F.2d 49, 54 (2d Cir. 1986)).

"While a court may presume that a *preparer of a report*, under a duty to relate information, will perform the task required and formulate justified conclusions and reasonable opinions based on evidence *actually observed by the preparer*, no such presumption arises when the preparer relies on potentially untrustworthy hearsay evidence from another individual under no duty to provide unbiased information." *See Miller v. Field*, 35 F.3d 1088, 1091–1092 (6th Cir. 1994). Moreover, reports such as the DOJ Findings Letter are not prepared for the "systematic conduct" of the government's business. "Their primary utility is in litigating . . . " *Palmer*, 318 U.S. at 115. *See* 42 U.S.C. § 1997b. Consequently, reports such as the DOJ Findings Letter lack the trustworthiness necessary for admissibility.**³**

Further, in this case, the official who prepared the DOJ Findings Letter lacked sufficient special skill or expertise for the report to be trustworthy. The DOJ Findings Letter purports to have been prepared by Loretta King, Acting Assistant Attorney General. There is simply no reason to believe that an acting assistant attorney general has any special skill or expertise concerning jail conditions or jail administration. " Doc. 175-6 at p. 24. <u>The DOJ Findings Letter is "lawyer talk" prepared by an advocate as a prerequisite to instituting litigation against Harris County</u>. It is *not* the report of a neutral government observer such as a medical examiner reporting the cause of death or an arson investigator reporting the origin of a fire. Indeed, the Findings Letter expressly states their "consultants' evaluations and work do not

---

**³** The potential for bias in the preparation of such reports is highlighted by the requirement that the United States Attorney General report to Congress on an annual basis concerning the impact of actions instituted pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"). See 42 U.S.C. § 1997f. Needless to say, a federal agency does not justify its need for funding by reporting to Congress that its function is unnecessary.

necessarily reflect the official conclusions of the Department of Justice . . . " Doc. 175-6 at p. 25.

The DOJ Findings Letter is also untrustworthy because no hearing was held to receive evidence. Instead, the attorneys and consultants employed by the DOJ Civil Rights Division interviewed individual inmates privately and would not permit Harris County's attorneys and/or consultants to be present during such interviews. *See* Exhibit 1 at p. 27 (Bates 4384). Thus, the DOJ based its Findings Letter upon unsworn hearsay from inmates—persons who are notoriously unreliable as witnesses. Moreover, such interviews provided only anecdotal evidence from a relatively small number of inmates. From January of 2005 until the end of 2008, the Harris County Sheriff's Office ("the Sheriff's Office") received and processed over half a million inmates in its jail facilities. The Sheriff's Office received approximately 128,518 inmates in 2005; 136,026 inmates in 2006; 135,050 inmates in 2007; and 134,000 inmates in 2008. Exhibit 1 at p. 4 (Bates 4361). During each of these years, the Sheriff's Office released, or transferred to another detention facility, approximately the same volume of inmates received by the Harris County Jail. *Id.* Nevertheless, the Justice Department based its sweeping conclusions upon the stories of a statistically insignificant number of inmate witnesses (21). Exhibit 1 at pp. 24–26 (Bates 4381–83). *See also generally* Doc. 175-6 (discussing interviews with inmates "AA" through "UU"). This process was necessarily an unreliable method of garnering evidence of "patterns" for an evaluation of "conditions" in the jail.

The methodology employed by the DOJ in conducting its investigation and preparing the DOJ Findings Letter also renders its report completely unreliable. Harris County responded to this unreliable Findings Letter on August 24, 2009, demonstrating that when reporting the results of its investigation of the conditions of a prisoner's confinement in the Harris County Jail system, **the DOJ Civil Rights Division failed to apply the applicable *constitutional* standards**. *E.g.*, Exhibit 1 at

7

pp. 14–18 (Bates 4371–75). The DOJ appears to refer to community based standards, or "generally accepted" or "best practice" standards, which are far more stringent than the minimum constitutional standards applied by the federal courts to allegations of constitutional deprivations. *Id.* The DOJ also failed to acknowledge Harris County's continuing compliance with the National Commission on Correctional Health Care's "best practice" community standards—above and beyond minimum constitutional standards—since 1985. Exhibit 1 at p. 18 (Bates 4375).

The DOJ's Findings Letter is also *inconsistent* with findings made by the DOJ's own National Institute of Corrections ("NIC"), the DOJ's own United States Marshal Service ("USMS"), the Texas Commission on Jail Standards ("TCJS"), independent advocacy groups, and other experts. The DOJ's NIC consultants inspected the Harris County Jail system from June 22–25, 2009, and, employing standards of the American Correctional Association, highly praised the Harris County jail on its operation of and conditions of confinement in the Harris County jail system. Exhibit 1 at pp. 31–43 (Bates 4388–4400).

Moreover, the DOJ Findings Letter is *inconsistent* with findings by the USMS. The USMS routinely monitors the conditions of inmates' confinement in the Harris County Jail system. After completing its July 2009 inspection of the Harris County jail, the USMS concluded the Harris County Jail system was compliant with each of the USMS's core detention standards and that HCSO has adequate policies, procedures, and processes in place to achieve each of the standards USMS assessed. Indeed, the USMS continued incarcerating some of its detainees in the Harris County Jail system following its 2009 report. Exhibit 1 at pp. 43–45 (Bates 4400–02).

Further, the allegations in the DOJ Findings Letter are *inconsistent* with the TCJS's 2007 and 2008 inspections of the Harris County jail system. Texas law requires the TCJS to inspect county jail facilities at a minimum annually, including surprise inspections, to ensure compliance with applicable jail standards. TCJS sends

8

an entire team of inspectors to conduct a week-long inspection of Harris County jail facilities. In 2007 and 2008, the time period covered by the DOJ Findings Letter, the Harris County Jail system successfully passed the annual state jail inspection and was found in full compliance with all applicable state jail standards since April 2007 and was in full compliance at the time Harris County responded to the DOJ Findings Letter in August 2009. Exhibit 1 at p. 45 (Bates 4402).

Harris County's response to the DOJ's Findings Letter also attached a July 22, 2009 letter from Advocacy, Incorporated ("Advocacy") in response to the DOJ Findings Letter, which *contradicts* the DOJ Findings Letter. Exhibit 1 at Bates 4708–10. Advocacy is authorized to "pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the State." Exhibit 1 at p. 47 (Bates 4404). Advocacy monitors Texas jail facilities and began focusing its attention on the Harris County Jail system in late 2006, and had continuously monitored the jail through August 2009 when Harris County responded to the DOJ Findings Letter. *Id.*

After the DOJ sent its June 2009 Findings Letter, Advocacy's lead attorney Beth Mitchell reinspected the Harris County Jail system's mental health facilities and found that "many of the areas that DOJ found to be insufficient are the very areas in which the [Harris County Jail] ha[d] already made huge strides and where [the Harris County jail] far exceeds the standards of most jails nationally." Exhibit 1 at pp. 47–48 (Bates 4404–05). *See also id.* at Bates 4708. Advocacy's letter also explained, at length, improvements made by Harris County in the initial identification, evaluation, and medication of inmates with mental illness. *Id.* at Bates 4708–10. Advocacy also summarized revisions made to HCSO's restraint and seclusion policies and procedures: "[Jail officials] ultimately agreed to implement the restraint and seclusion policies used in Texas' state hospitals which exceed CMS's Conditions of Participation (CoPs) standards regarding the use of restraint and seclusion. Again,

9

something I am sure no other jail has been willing to adopt." Exhibit 1 at Bates 4709–10. Advocacy concluded its response to the DOJ Findings Letter by underscoring "the sweeping and substantive changes to the care and treatment of the individuals with mental illness" made by Harris County in its jail system. Exhibit 1 at Bates 4710.

Harris County also attached its own experts' reports that were inconsistent with the DOJ Findings. Indeed, **the DOJ Findings Letter admittedly did not rely on their own consultants' findings**. *See* Exhibit 1 at pp. 46–47 (Bates 4403–04), 50–56 (Bates 4407–13). *See also* Exhibit 1 at Bates 4712–79, 4781–85. Thus, the DOJ report is inadmissible because it is untrustworthy and unreliable, particularly in this federal litigation to prove a constitutional violation.

### III. The Court should strike the irrelevant consultant's report

Plaintiffs' Exhibit 15 is a memorandum provided by a Harris County consultant firm that HCSO hired to review Lucas's cell extraction and the policies in effect. Doc. 175-18. The 10-page memorandum purports to provide a summary of the incident at bar and to provide recommendations going forward. However, there are numerous issues with this memorandum that make it irrelevant and inadmissible.

First, the memorandum is dated June 15, 2014—more than four months *after* the February 17, 2014 incident at issue here. Plaintiffs purport to utilize this memorandum to support their claim that Harris County was on notice their cell extraction methods should be changed. However, the memorandum could not have provided Harris County notice of anything at the time of incident at bar because it did not exist at the time. Second, the memorandum is inadmissible hearsay. Plaintiffs' response repeatedly cites the memorandum for the truth of the matter they are asserting, namely that there was a pattern of constitutional violations in the jail.[4]

---

[4] *See, e.g.*, Doc. 175 at pp. 38 of 168 ("GMJA's conclusions are consistent with Plaintiffs' expert opinions in this case."), pp. 63 of 168 & n.212 (stating "independent consulting agency hired by the County opining that Officer Defendants 'acted in accordance with existing policy at the time

However, the memorandum does not mention the word "constitution" and does not provide any findings or recommendations in the context of avoiding constitutional violations. Nor does the report cite any constitutional provisions or show that its authors are qualified to make the assessments, particularly in the context of avoiding constitutional violations. The memorandum is unreliable and untrustworthy insofar as Plaintiffs rely on it for evidence of any constitutional violation. The report was only intended to serve as assistance to the Harris County Sheriff's Office in avoiding similar deaths in the future, which is a subsequent remedial measure that is not admissible to prove culpable conduct. Fed. R. Evid. 407. Thus, the Court should strike and not consider Plaintiffs' Exhibit 15 and references thereto.

IV. **The Court should strike Plaintiffs' counsel's affidavit**

Plaintiffs' response inappropriately attached a Declaration of Benjamin Major in support of Plaintiffs' Response. Doc. 175-1. The affidavit is simply a list and description of Plaintiffs' exhibits. Despite declaring he has personal knowledge of the matters in the affidavit, there is no indication that Plaintiffs' counsel is the custodian of records for any of the documents attached as exhibits or that Plaintiffs' counsel has personal knowledge of the preparation and accuracy of such documents. This is not a business records affidavit. Therefore, the Court should strike the affidavit, of which Plaintiffs' counsel has no personal knowledge.

**CONCLUSION & REQUEST FOR RELIEF**

Defendants object and move to strike Plaintiffs' Exhibits 2A, 3, and 15 in support of Plaintiffs' response to Defendants' motions for summary judgment and

---

of the incident" to support Plaintiffs' assertion that "All the Officer Defendants vehemently claim that Harris County policies, procedures, practices, and training guided each and every action, inaction, response, and decision made by the containment team.").

references thereto. Docs. 175-4, 175-6, & 175-18. Defendants further object and move to strike Plaintiffs' attorney's affidavit and references to it. Doc. 175-1.

For these reasons, Defendants respectfully requests the Court to strike and decline consideration of Plaintiffs' inadmissible Exhibits 2A, 3, and 15 and references therto; to strike and decline consideration of Plaintiffs' attorney's affidavit and references thereto; and for such other and further relief to which the Court finds Defendants justly entitled.

**Date: June 15, 2018**

Respectfully submitted,

By: */s/ Keith A. Toler*
**LAURA BECKMAN HEDGE**
Assistant County Attorney
**Attorney-in-Charge**
Texas Bar No. 00790288
Southern District of Texas No. 23243

Harris County Attorney's Office
1019 Congress, 15th Floor
Houston, Texas 77002
Phone: (713) 274-5137
Fax: (713) 755-8924
Email: Laura.Hedge@cao.hctx.net

**OF COUNSEL:**

VINCE RYAN
Harris County Attorney

KEITH A. TOLER
Assistant County Attorney
Texas Bar No. 24088541
Southern District of Texas No. 2599245

Harris County Attorney's Office
1019 Congress, 15th Floor
Houston, Texas 77002
Phone: (713) 274-5265
Fax: (713) 755-8924

Email: Keith.Toler@cao.hctx.net

*Attorneys for Defendant*
*Harris County, Texas*


*/s/ Mary E. Baker*
**MARY E. BAKER**
Assistant County Attorney
**Attorney-in-Charge**
Texas Bar No. 08534000
Southern District of Texas No. 7647

Harris County Attorney's Office
1019 Congress, 15th Floor
Houston, Texas 77002
Phone: (713) 274-5133
Fax: (713) 755-8924
Email: Mary.Baker@cao.hctx.net

**OF COUNSEL:**

VINCE RYAN
Harris County Attorney

*Attorneys for Defendants*
*Harris County Sheriff's Office*
*Deputy David Gordan,*
*Detention Officer Alicia Scott,*
*Deputy Xavier Levingston,*
*Detention Officer Broderick Green,*
*Detention Officer Jesse Bell,*
*Detention Officer Morris Thomas, &*
*Detention Officer Adam Kneitz*

## CERTIFICATE OF CONFERENCE

I certify that on June 15, 2018, I emailed all parties' counsel to confer on this motion. Plaintiffs' attorney Scott Medlock responded by email that Plaintiffs oppose the relief requested herein.

/s/ Keith A. Toler
**Keith A. Toler**
Assistant County Attorney

## CERTIFICATE OF SERVICE

I certify that on June 15, 2018, I filed a true and correct copy of the foregoing motion on the Court's CM/ECF system, which will automatically serve a Notice of Electronic Filing on all parties' counsel.

| **Plaintiffs' Counsel** | **Co-Defendants' Counsel** |
|---|---|
| W. Mark Lanier | Edward John Kroger |
| Lawrence P. Wilson | Colin Goodman |
| Benjamin T. Major | Kroger Burrus |
| The Lanier Law Firm | 3100 Weslayan, Suite 300 |
| 6810 FM 1960 West | Houston, Texas 77027 |
| Houston, Texas 77069 | |

Jeffrey S. Edwards
Scott Medlock
The Edwards Law Firm
1101 East 11th Street
Austin, Texas 78702

Roy W. Smith
Jonathan D. Goins
2616 South Loop West, Suite 670
Houston, Texas 77054

/s/ Keith A. Toler
**Keith A. Toler**
Assistant County Attorney