IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CASANDRA SALCIDO, *et al*, | § | |
| | § | |
| Plaintiffs, | § | CASE NO. 4:15-cv-02155 |
| | § | |
| vs. | § | |
| | § | JURY DEMANDED |
| HARRIS COUNTY, *et al*, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' CONSOLIDATED RESPONSE TO DEFENDANTS' MOTION TO STRIKE AND OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

The Court should deny Defendants' motion to strike, Doc. 194, and overrule the officer Defendants' objections to the Plaintiffs' summary judgment appendix. Doc. 193.

In this case arising from Kenneth Lucas' asphyxiation during a forcible cell extraction in the Harris County Jail, the Court should certainly consider the Department of Justice's warning the County about restraint methods that blocked airways, Doc. 175-6; the County's own investigation into Lucas' death, Doc. 175-18; a retained warden's expert opinion that the force used was unnecessary, Doc. 175-27; the words spoken in the video of Lucas' death, Doc. 175-5; and a declaration which identities the documents in Plaintiff's appendix. Doc. 175-1. Defendants' objections to and motion to strike this evidence are meritless—at best, they *disagree* with this evidence or assert grounds that are not even applicable at the summary judgment stage.

The officer Defendants' remaining objections border on harassing and should also be overruled. They assert 1,076 generic deposition objections—but decline to explain a single one. The Court should find they waived them or, in the alternative, that each one is meritless or moot.

Plaintiffs respectfully ask that the Court deny the Defendants' motion to strike and overrule their meritless objections.

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ ii

TABLE OF AUTHORITIES ............................................................................................... iii

I.   NATURE AND STAGE OF THE PROCEEDING ........................................................1

II.  STANDARD OF REVIEW .............................................................................................1

III. ARGUMENT...................................................................................................................2

    A.   THE LETTER FROM THE DEPARTMENT OF JUSTICE PROVIDED HARRIS COUNTY NOTICE OF ITS DANGEROUS PRACTICES AND IS ADMISSIBLE....................................................2

        1.   The plain language of the Department of Justice letter is relevant............................3

        2.   The Department of Justice letter is admissible as a reliable public record primarily offered to show notice....................................................................................4

    B.   THE GRIFFITH MOSELEY JOHNSON & ASSOCIATES REVIEW IS ADMISSIBLE IN ITS ENTIRETY. ....................................................................................................................8

    C.   WARDEN RON MCANDREW'S DECLARATION IS ADMISSIBLE IN ITS ENTIRETY. .................11

    D.   THE CAPTIONS ON THE EXTRACTION VIDEO ARE ADMISSIBLE............................................14

    E.   COUNSEL'S DECLARATION AUTHENTICATING THE APPENDIX IS ADMISSIBLE. ..................18

    F.   THE OFFICER DEFENDANTS HAVE WAIVED THEIR OBJECTIONS TO DEPOSITION TESTIMONY BY FAILING TO EXPLAIN THEM. ......................................................................................19

        1.   The officer Defendants' 1,076, boilerplate objections prejudice Plaintiffs' ability to respond......................................................................................................................20

        2.   The officer Defendants have even objected to questions that were mooted by nonresponsive answers and curative questioning. ...................................................21

    G.   IN ADDITION, THE OFFICER DEFENDANTS' GENERIC DEPOSITION OBJECTIONS ARE BASELESS AND SHOULD BE OVERRULED.......................................................................22

        1.   Defendants' abundant objections to "speculation," "calls for a legal conclusion," "inadequate predicate," and "calls for an expert opinion" are improper...............23

        2.   Defendants' objections to "vague" in particular are so incomprehensible that they are meritless.........................................................................................................28

        3.   Defendants' objections to "argumentative" are misplaced......................................29

        4.   Plaintiffs' questions about evidence and testimony do not state false facts— although the mistaken objections thereto certainly reflect facts and testimony Defendants disagree with. ..........................................................................................30

IV. CONCLUSION ..............................................................................................................33

**TABLE OF AUTHORITIES**

**Cases**

*Amaretto Ranch Breedables v. Ozimales*,
  907 F.Supp.2d 1080 (N.D. Cal. 2012) ........................................................ 19

*Anderson v. Dallas Cty., Texas*,
  No. 3:05-CV-1248-G, 2007 WL 1148994 (N.D. Tex. Apr. 18, 2007) ........................ 19

*Bell v. Harris County*,
  No. H-10-2421, 2011 WL 2494103 (S.D. Tex. June 22, 2011) ......................... 2, 6

*BP Expl. & Prod. Inc. v. Cashman Equip. Corp.*,
  No. H-13-3046, 2016 WL 1387907 (S.D. Tex. Apr. 8, 2016) ......................... 17

*Cisneros v. Napolitano*,
  No. CIVASA08-CV-0856OGNN, 2010 WL 1189915 (W.D. Tex. Mar. 25, 2010) ........ 29

*Collins v. Wayne Corp.*,
  621 F.2d 777 (5th Cir. 1980) ......................................................... 9

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ....................... 23

*Eason v. Fleming Companies, Inc.*,
  4 F.3d 989 (5th Cir. 1993) ........................................................... 5

*Flooring Sys., Inc., v. Chow*,
  No. 4:12–CV–475, 2013 WL 4674667 (E.D.Tex. Aug. 27, 2013) ................. 21

*Foley v. City of Lowell*,
  948 F.2d 10 (1st Cir. 1991) ......................................................... 9

*Hancock v. Baker*,
  263 F. App'x 416 (5th Cir. 2008) .................................................. 13

*Henry v. County of Shasta*,
  132 F.3d 512 (9th Cir.1997) ......................................................... 9

*Hobart v. Estrada*,
  582 F. App'x 348 (5th Cir. 2014) .................................................. 24

*Huthnance v. District of Columbia*,
  793 F.Supp.2d 183 (D. D.C. 2011) .................................................. 9

*In re Wells Fargo Wage & Hour Employment Practices Litig. (No. III)*,
  No. H-11-2266, 2012 WL 3308880 (S.D. Tex. Aug. 10, 2012) ................. 24

*International Shortstop, Inc. v. Rally's, Inc.*,
    939 F.2d 1257 (5th Cir. 1991) .................................................................... 9

*Ismail v. Cohen*,
    899 F.2d 183 (2nd Cir. 1990) .................................................................... 9

*Kennedy v. City of Cincinnati*,
    595 F.3d 327 (6th Cir. 2010) .................................................................... 24

*Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*,
    No. 4:08–cv–243, 2009 WL 901128 (E.D.Tex. Mar. 30, 2009) ................ 21

*Lee v. Offshore Logistical & Transp., L.L.C.*,
    859 F.3d 353 (5th Cir. 2017) ................................................................ 2, 15

*Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*,
    831 F.2d 77 (5th Cir. 1988) ...................................................................... 2

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
    66 F. Supp. 3d 795 (E.D. Tex. 2014) ...................................................... 21

*Maurer v. Indep. Town*,
    870 F.3d 380 (5th Cir. 2017) .................................................................... 2

*McConathy v. Dr. Pepper/Seven Up Corp.*,
    131 F.3d 558 (5th Cir. 1998) .................................................................. 18

*Miles Bramwell USA, LLC v. Weight Watchers Int'l, Inc.*,
    No. 4:12–CV–292, 2013 WL 1797031 (E.D.Tex. Mar. 27, 2013) ............ 21

*Moss v. Ole S. Real Estate, Inc.*,
    933 F.2d 1300 (5th Cir. 1991) .................................................................. 4

*Munn v. City of Ocean Springs, Mississippi*,
    No. 1:14CV428-LG-RHW, 2016 WL 2757758 (S.D. Miss. May 12, 2016) .............. 29

*Nearstar, Inc. v. Waggoner*,
    No. 4:09-cv-218, 2011 WL 817374 (E.D.Tex. Mar. 2, 2011) .................. 21

*Nolen v. Corinthian Colleges, Inc.*,
    No. SA-07-CA-805-OG, 2009 WL 10700095 (W.D. Tex. Mar. 26, 2009) .............. 23

*O'Rourke v. Hayes*,
    378 F.3d 1201 (11th Cir. 2004) .............................................................. 13

*Paske v. Fitzgerald*,
    No. CIV.A. H-12-2915, 2014 WL 1366552 (S.D. Tex. Apr. 7, 2014) ............ 19

*Payne v. Collins,*
    986 F.Supp. 1036 (E.D. Tex. 1997) ................................................................ 9

*Poole v. Glanz,*
    No. 11–CV–797–JED–TLW, 2014 WL 4286481 (N.D. Okla. 2014) .............................. 9

*Shepherd v. Dallas Cnty., Tex.,*
    591 F.3d 445 (5th Cir. 2009) ................................................................ 4, 6, 9

*Tex. Sales & Mkt., Inc. v. Distinctive Appliances, Inc.,*
    No. H-05-3555, 2007 WL 399292 (S.D. Tex. 2007) ........................................ 1

*Tucker v. SAS Inst., Inc.,*
    462 F. Supp. 2d 715 (N.D. Tex. 2006) .................................................... 19

*United States v. Avants,*
    367 F.3d 433 (5th Cir. 2004) .............................................................. 19

*United States v. Booker,*
    334 F.3d 406 (5th Cir. 2003) .............................................................. 16

*United States v. Chaney,*
    299 Fed. App'x. 447 (5th Cir. 2008) ...................................................... 15

*United States v. Garcia,*
    334 Fed. App'x 609 (5th Cir. 2009) ....................................................... 17

*United States v. Gluk,*
    831 F.3d 608 (5th Cir. 2016) ................................................................ 5

*United States v. Jimenez–Lopez,*
    873 F.2d 769 (5th Cir. 1989) .............................................................. 18

*United States v. Lewis,*
    796 F.3d 543 (5th Cir. 2015) ........................................................... 1, 21

*United States v. Lynn,*
    608 F.2d 132 (5th Cir. 1979) ................................................................ 9

*United States v. Onori,*
    535 F.2d 938 (5th Cir.1976) .............................................................. 15

*United States v. Ruppel,*
    666 F.2d 261 (5th Cir. 1982) .............................................................. 17

*United States v. Thompson,*
    130 F.3d 676 (5th Cir. 1997) .............................................................. 17

*United States v. Valencia,*
  957 F.2d 1189 (5th Cir.1992) ........................................................ 15

*United States v. Wilson,*
  578 F.2d 67 (5th Cir. 1978) .......................................................... 15

*Williams v. Kaufman Cnty.,*
  352 F.3d 994 (5th Cir. 2003) ........................................................ 24

**Statutes**

52 U.S.C. § 1997 ................................................................................ 5

**Rules**

FED. R. CIV. P. 26 .............................................................................. 15

FED. R. CIV. P. 37 .............................................................................. 15

FED. R. CIV. P. 56 ............................................................... 12, 13, 15

FED. R. EVID. 407 ............................................................................. 10

FED. R. EVID. 701 ....................................................................... 10, 23

FED. R. EVID. 702 ....................................................................... 10, 16

FED. R. EVID. 801 ....................................................................... 4, 7, 9

FED. R. EVID. 803 .............................................................................. 4

**Treatises**

MOORE'S FEDERAL PRACTICE–CIVIL (2017) ...................................... 2

# I. NATURE AND STAGE OF THE PROCEEDING

Defendants asphyxiated Kenneth Lucas, a pre-trial detainee in the Harris County Jail, by pinning him face down on a gurney for over five minutes while an officer sat on top of him, officers held his shackled limbs behind his back in a hogtie position, and he cried that he could not breathe. *See* Doc. 175-4, Ex. 2-A. This practice, including the officers' ignoring Lucas' pleas for help, was "by the book" for the Harris County Jail at the time. *See, e.g.*, Doc. 175-7, Ex. 4 (Garcia dep.), at 180:11–181:14; Doc. 175-11, Ex. 8 (Leveston dep.), at 52:20–25; Doc. 175-12, Ex. 9 (Green dep.), at 64:1–5; Doc. 175-13, Ex. 10 (Thomas dep.), at 96:11–24.

On July 28, 2015, Lucas' survivors filed this suit against Defendants—the County itself and most of the individuals involved in killing him. Doc. 1. Defendants moved for summary judgment on February 9 and February 10, 2018. Docs. 145–158.

On April 9, 2018, Plaintiffs responded in opposition to Defendants' motions for summary judgment. Doc. 175. In support of the response, Plaintiffs filed an appendix. Doc. 175; Doc. 176.

On June 15, 2018, the individual officer Defendants filed objections to portions of the appendix. Docs. 190–193. That same day, officers and Defendant Harris County moved to strike certain exhibits from the appendix. Doc. 194.

# II. STANDARD OF REVIEW

"[A]n evidentiary objection must 'state[ ] the specific ground, unless it was apparent from the context.'" *United States v. Lewis*, 796 F.3d 543, 545 (5th Cir. 2015).

"In reviewing evidence favorable to the party opposing a motion for summary judgment, a court should be more lenient in allowing evidence that is admissible, though it may not be in admissible form." *Tex. Sales & Mkt., Inc. v. Distinctive Appliances, Inc.*, No. H-05-3555, 2007 WL 399292, *3 (S.D. Tex. 2007) citing *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*,

831 F.2d 77, 80 (5th Cir. 1988) ("[T]he papers of a party opposing summary judgment are usually held to a less exacting standard than those of the moving party.").

"At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form." *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017) (reversing grant of summary judgment due to exclusion of summary judgment evidence). "Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible ..., the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017), *as revised* (July 5, 2017) (quoting 11 MOORE'S FEDERAL PRACTICE–CIVIL ¶ 56.91 (2017)) (vacating and remanding order excluding summary judgment evidence).

## III.  ARGUMENT

Defendants' objections and motion to strike are without merit, so they should be overruled and denied in their entirety for the reasons stated below.

### A.  THE LETTER FROM THE DEPARTMENT OF JUSTICE PROVIDED HARRIS COUNTY NOTICE OF ITS DANGEROUS PRACTICES AND IS ADMISSIBLE.

Defendants seek to exclude a 2009 Department of Justice letter criticizing the County because they disagree with the substance of the letter. This Court denied exclusion of exactly the same letter against Harris County seven years ago, and the same reasons prevail to show it is admissible in this case. *See Bell v. Harris County*, No. H-10-2421, 2011 WL 2494103, *10 (S.D. Tex. June 22, 2011) (Lake, J.). Contrary to the County's arguments, the letter is relevant—it alleges the jail officers had a pattern of using excessive force in exactly the same manner that killed Lucas—five years before Lucas' death. Moreover, the letter is reliable, satisfying the hearsay exception for a public record—and in any event, it is admissible to show Harris County's policymakers had subjective awareness of the dangerous hogtying practice. The motion to

exclude the letter should be denied.

### 1. The plain language of the Department of Justice letter is relevant.

The Department of Justice letter warned the County, "the Harris County Jail does not train staff that hogtying and choke holds are dangerous, prohibited practices." Doc. 175-6, Ex. 3, p. 16. This is relevant and was still true when the County killed Lucas: Rather than training officers that the hogtie position was dangerous, the County trained officers to place detainees in that dangerous position during cell extractions.[1] The County ignored the opportunity the DOJ's prophetic warning, refusing to reevaluate its cell extraction practices or training to save lives.[2]

This is obviously relevant to *Monell* liability, as it refutes the County's argument that "Plaintiffs have no evidence Sheriff Garcia had constructive knowledge of an unconstitutional custom or practice." Doc. 152, p. 38. To the contrary, although there is other evidence the practice was widespread and obviously dangerous as discussed in Plaintiffs' briefing, Doc. 175, pp. 109–124,[3] the Department of Justice letter gave actual notice to Sheriff Garcia that he needed to end this dangerous practice long before it killed Lucas.

The letter also speaks to a material dispute of fact (including with the individual officers, who object to relevance) that hogtying is dangerous. *Contra* Doc. 193, p. 2.

---

[1] *See, e.g.*, Doc. 175-8, Ex. 5 (Anderson dep.), 86:4–17, 97:6–15; Doc. 175-17, Ex. 14 (Bell dep.), 28:3–8; Doc. 175-13, Ex. 10, Thomas, 17:3–10; Doc. 175-9, Ex. 6 (Scott dep.), 68:21–69:25. More evidence is cited and discussed in the briefing. Doc. 175, pp. 45–52, 115–124.

[2] *Id.*; *see, e.g.*, Doc. 175-7, Ex. 4 (Garcia dep.) at 39:23–40:10, 42:1–10, 42:25–43:2, 62:16–63:6, 163:5–165:24, 167:2–4; Doc. 175-15, Ex. 12 (Ritchie dep.) at 36:8–37:21, 38:7–39:1; Doc. 176, Ex. 34 (Ritchie report).

[2] *Id.*; *see, e.g.*, Doc. 175-7, Ex. 4 (Garcia dep.) at 39:23–40:10, 42:1–10, 42:25–43:2, 62:16–63:6, 163:5–165:24, 167:2–4; Doc. 175-15, Ex. 12 (Ritchie dep.) at 36:8–37:21, 38:7–39:1; Doc. 176, Ex. 34 (Ritchie report).

[3] And the Sheriff watched the practice of extracting inmates in action prior to Lucas' death. Doc. 175-7, Ex. 4 (Garcia dep.) at 39:23–40:10, 42:1–10, 42:25–43:2, 163:5–165:24, 167:2–4.

Accordingly, the Court should reach the unsurprising conclusion that a letter written about an investigation of a jail, warning about the dangers of hogtying, is relevant in a lawsuit against people at that jail who killed someone by hogtying him.

### 2. The Department of Justice letter is admissible as a reliable public record primarily offered to show notice.

The Department of Justice letter to Harris County, Doc. 175-6, Ex. 3, should not be excluded as inadmissible hearsay for two reasons. First, it is a trustworthy public record, an exception to the hearsay rule. FED. R. EVID. 803(8). Second, the letter is also offered to show notice, rather than the matters asserted within, so it is not hearsay. FED R. EVID. 801(c)(2). For these reasons, courts routinely admit this exact same type of evidence in cases alleging unconstitutional jail conditions. *See Shepherd v. Dallas Cnty., Tex.*, 591 F.3d 445, 457 (5th Cir. 2009).

#### i. Defendants fail to meet their burden to prove the Department of Justice letter is untrustworthy.

The Department of Justice letter is trustworthy, as it arose from a multi-pronged investigation of facts on the ground in the jail by an authorized government agency that relied on the expertise of numerous consultants. Defendants' disagreement with the letter's conclusions is not grounds to challenge its admissibility.

Under the public records exception to the rule against hearsay, an out of court "report or statement of a public office" is not prohibited hearsay if "it sets out: … factual findings from a legally authorized investigation; and the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." FED. R. EVID. 803(8). "In light of the presumption of admissibility, the party opposing the admission of the report must prove the report's untrustworthiness." *Moss v. Ole S. Real Estate, Inc.*, 933 F.2d 1300, 1305 (5th Cir.

1991). "Credibility is not the focus of the trustworthiness inquiry." *Id.* at 1306. As such, "general complaints that the report is incomplete or inaccurate go to the weight afforded the report rather than to its admissibility." *Eason v. Fleming Companies, Inc.*, 4 F.3d 989 (5th Cir. 1993), *for text, see* No. 92-1390, 1993 WL 13015208 (5th Cir. Aug. 24, 1993) (affirming admission of EEOC report). "[A] report prepared by a staff member in the ordinary course of duty and circulated outside the agency is exactly the sort of 'factual findings from a legally authorized investigation' that 803(8)(iii) is designed to exclude from the prohibition on hearsay." *United States v. Gluk*, 831 F.3d 608, 613 (5th Cir. 2016) (holding SEC documents admissible).

The Department of Justice's inquiry relied upon facts learned from physical inspections and interviews, making it both reliable and extremely uncomfortable for the County. In particular, the Department of Justice correctly criticized the County for hogtying, even though its black-letter policy prohibits the technique, because this policy was nullified in practice. Doc. 175, Ex. 3, p. 1. The evidence in this case shows that the facts on the ground might surprise someone who just reads the policy manual, as at this time the County routinely placed inmates in dangerous hogtie positions that—in the case of Kenneth Lucas—also involved dangerous pressure to his chest, face, and neck. Doc. 175-4, Ex. 2-A, 17 min., 13 s. The position Lucas was held and Lucas's death would not be possible if the County were correct in its response to the Department of Justice that its policies effectively foreclosed "the use of deadly force, including the compression of a person's neck in a manner that could result in death or serious bodily injury." Doc. 194-1, p. 122.

The Department of Justice report is also trustworthy because the source is an agency experienced in correctional oversight. Aside from the fact that the statutory purpose and practical

expertise of the Civil Rights Division is to enforce civil and constitutional rights,[4] the face of the letter states that it was not merely lawyers who prepared the report: It relied upon "correctional experts in the fields of penology, medicine, psychiatry, and life safety." Doc. 175-6, Ex. 3, p. 1. The only indication of bias the County can muster is to point out that the Division answers to Congress, did not hold a hearing, and has the power to prosecute the County. But government agencies reporting to the people, investigating without a hearing, and enforcing the law is *the norm*, so faulting government agencies for these features would swallow the entire rule.

Indeed, the Fifth Circuit affirmed the admission of an comparable Department of Justice report sent to Dallas County regarding conditions in the county jail in *Shepherd v. Dallas County*. 443 F.3d 445, 457 (5th Cir. 2009). Although Dallas only objected on Rule 403 grounds, the Fifth Circuit reasoned: "When the subject of this balancing test is a government report or other public record, the court must take care to ensure that Rule 403 does not undermine the policy in favor of the admission of such evidence that is embodied in Rule 803(8)(C)." *Id.* The Fifth Circuit rejected Dallas County's argument that the Department of Justice was not a credible author, as "[q]uestions of credibility are properly for the jury." *Shepherd v. Dallas Cty.*, 591 F.3d 445, 457 (5th Cir. 2009). Likewise, this Court should reject Harris County's speculative argument that the Department of Justice is not a sufficiently "neutral government observer" due to "[t]he potential for bias." Doc. 194, p. 6. Even if these conclusory charges held any water (though they obviously do not), these credibility attacks are for the jury to resolve.

Relying on *Shepherd*, this Court overruled Harris County's objections to this exact same document in *Bell v. Harris County*. In that case, this Court raised the public record exception to exclusion *sua sponte* and reasoned, "[i]n other cases where this issue has arisen, courts have

---

[4] *See* https://www.justice.gov/crt/about-division; 52 U.S.C. § 1997.

recognized that such letters are not excluded by the hearsay rule." No. H-10-2421, 2011 WL 2494103, *10 (S.D. Tex. June 22, 2011) (Lake, J.). This Court thus concluded that it was "not persuaded that the DOJ letter is inadmissible hearsay." *Id.*

The remaining criticisms Defendants level merely point to factual disagreements with the letter, not its reliability or admissibility. That different government agencies did not find problems with the jail does not mean the Department of Justice's criticisms are unreliable, although of course the jury may consider contrary admissible evidence in evaluating the letter's credibility. Notably, though, as pertains to this case, the apparent inconsistency between the National Institute of Corrections evaluation quoted in Harris County's response letter and the Civil Rights Division letter is easily explained. The NIC only reviewed the jail's policies, *not actual incidents on the ground*—as this case exemplifies. Forbidding hogtying on paper, whilst directing officers to routinely place inmates in a hogtie position in practice, unsurprisingly misleads third parties who try to understand the jail's practices.

Accordingly, Defendants have not met their burden to show the U.S. Department of Justice is untrustworthy, only pointing to countervailing evidence that is not pertinent to the question of admissibility. The Court should deny the motion to strike.

> ii. *The Department of Justice letter's primary relevance is not for the truth of the matter asserted, but that those assertions were made.*

As the Department of Justice letter is also offered to show notice to Harris County policymakers of the problem that caused Lucas' death, it is not hearsay. FED. R. EVID. 801(c)(2). Belying the County's contention that the document is "untrustworthy," the Department of Justice letter correctly warned of hogtying—the very method the County trained its extraction teams to use to restrain pre-trial detainees. *See supra* n.1. The County clearly received the letter. Doc. 194-1. But the County did not do what a reasonable policymaker would: Instead of actually

fixing its training and practices, it just had its defense attorneys write a long letter to the Department of Justice. *Id.* Accordingly, the Department of Justice letter is primarily relevant to show notice to the County of alleged constitutional deficiencies, rather than the truth of the matters asserted therein, so it is not hearsay and is admissible.

On this independent basis, the Court should deny Defendants' motion to strike.

**B.    THE GRIFFITH MOSELEY JOHNSON & ASSOCIATES REVIEW IS ADMISSIBLE IN ITS ENTIRETY.**

Harris County hired a thirty-year law enforcement veteran, through a consulting firm, to review Lucas' death. The ensuing report is obviously admissible and the Defendants' motion to exclude it should be denied. The motion's two paragraphs on the subject raise three arguments to exclude, Doc. 194, pp. 10–11, but they are all incorrect.

First, contrary to the Defendants' argument, the report is directly relevant to numerous factual disputes. The County's complaint that the report cannot be relevant because it was written four months after Lucas' death is nonsense. It is *about* Lucas' death and the policies and practices that caused it. For example, the report includes statements that bear directly on the incident at issue, such as:

> A review of the video showed Lucas's legs were restrained using leg irons. It did not appear necessary for a DCCT member to ride on top of the gurney pinning his legs to his back.
>
> The manner and position coupled with the length of time in which Lucas was placed on the gurney appeared to result in Lucas having difficulty breathing.
>
> The DCCT policy contains no provisions for precautions to avoid or reduce possible positional asphyxiation.

Doc. 175-18, Ex. 15, pp. 6, 8. These findings, show that excessive force was used and that the County encouraged it. Moreover, even if the report were not about *this exact incident*, the Fifth Circuit and other courts in civil rights cases admit evidence of post-incident conduct or

occurrences as evidence of ongoing practices, customs, or deliberate indifference to a known risk.[5]

Second, the report is not hearsay because the County hired the author of the report, who relied solely upon statements by County employees and the County's records to write the report. Doc. 175-18, Ex. 15, pp. 1–2. Thus, the report is a statement "offered against an opposing party and ... was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." FED. R. EVID. 801(d)(2)(C). "[A]dmissions by a defendant are not hearsay." *United States v. Lynn*, 608 F.2d 132, 135 (5th Cir. 1979). And that includes the statements of their contractors they hire to investigate the incident at issue. *See Collins v. Wayne Corp.*, 621 F.2d 777 (5th Cir. 1980), *superseded on other grounds as stated in Mathis v. Exxon Corp.*, 302 F.3d 448, 459 n.16 (5th Cir. 2002) (retained litigation investigator's statements are those of a party opponent, superseded regarding 103(a) preservation issue). The Court should thus deny the motion to strike because the report is a statement of Defendant Harris County.

---

[5] *Shepherd v. Dallas Co.*, 591 F.3d 445, 457 (5th Cir. 2009) (admitting Department of Justice report into evidence showing jail's "specific incidents of failure to provide adequate medical care that occurred shortly before, during, *and shortly after* the period of [the prisoner's] detention") (emphasis added); *Payne v. Collins*, 986 F.Supp. 1036, 1058 (E.D. Tex. 1997) (overruling objection to relevance of prison investigation "because it was instigated by events subsequent to the attacks on [plaintiff]") (citing *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992)); *Henry v. County of Shasta*, 132 F.3d 512, 519 (9th Cir.1997), *opinion amended on denial of rehearing en banc*, 137 F.3d 1372 (9th Cir. 1998) ("Post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but may be highly probative with respect to that inquiry."); *Foley v. City of Lowell*, 948 F.2d 10, 14–15 (1st Cir. 1991) ("On the facts of this case, it was well within the trial court's discretion to conclude that the Finnegan incident was competent, if indirect, evidence of a preexisting municipal policy of indifference."); *Ismail v. Cohen*, 899 F.2d 183, 188 (2nd Cir. 1990) (affirming admission of evidence regarding subsequent similar conduct by defendant as relevant to "pattern, intent, absence of mistake, etc."); *Poole v. Glanz*, No. 11–CV–797–JED–TLW, 2014 WL 4286481 at *1 (N.D. Okla. 2014) (post incident evidence relevant "to show the policymaker's disposition or the existence of a policy or custom at the time."); *Huthnance v. District of Columbia*, 793 F.Supp.2d 183, 210 (D. D.C. 2011), *aff'd*, 722 F.3d 371 (D.C. Cir. 2013).

In addition, much of the substance of the report could be admitted at trial as expert evidence. *See* FED. R. EVID. 701, 702. The author, Robert Green, now a sheriff's Lieutenant for Kendal County, has decades of experience in law enforcement. Ex. 1, p. 2, *available at* http://www.kendallcountysheriff.com/Administration.html. The firm, Griffith Moseley Johnson & Associates, specializes in criminal justice review and still works for Harris County. Ex. 2, p. 1, *available at* http://gmjinc.com/criminal-justice/. Lt. Green's report identifies the facts he relied upon as well as the reasoning behind his conclusions. Doc. 175-18, Ex. 15. Exhibits 1 and 2 to this response—as well as the fact that the County hired him—establish his qualifications. The Court should therefore also deny the motion to strike because the report is an expert opinion that could easily be made admissible at trial.

Third, the report is not primarily about subsequent remedial measures, because the report only tangentially refers to changes the County made after Lucas' death—instead, nine pages out of the ten page report only discuss what happened to Lucas and problems with the County's policies at that time of Lucas' death. *See generally* Doc. 175, Ex. 15.

Even as to those changes the County made after Lucas's death, this evidence in the report is admissible under a black letter exception to Rule 407. "[T]he court may admit this evidence for another purpose, such as impeachment or—if disputed—proving … the feasibility of precautionary measures." FED. R. EVID. 407. For example, the County's change in policy to require a medical review prior to forced cell extractions (as indicated in the report, Doc. 175, Ex. 15, p. 10) proves that such a change is feasible, which was disputed by at least two County employees (it also impeaches the credibility of those witnesses who testified this was not feasible).[6] The multiple other safeguards the County implemented for cell extractions after

---

[6] Doc. 175, Ex. 5 (Anderson dep.), p. 49:17–50:5; Ex. 7 (Gordon dep.), p. 87:8–23.

Lucas' death—notably, the presence of medical staff during extractions and an officer dedicated to watching that the inmate's restraint does not obstruct breathing—contradict the Defendants' argument that placing Lucas face down on a gurney, wheeling him across the facility without any medical providers present, and ignoring the obvious signs that he was having trouble breathing was the "only option to transport the uncooperative Lucas." Doc. 152, p. 59. This argument is belied by the simple fact that the County no longer does this; its current policies were just as much an "option" before Lucas' death as they are today.

Accordingly, the Court should deny Defendants' motion to strike the obviously relevant report on Lucas' death by the County's own agent.

### C.   WARDEN RON MCANDREW'S DECLARATION IS ADMISSIBLE IN ITS ENTIRETY.

The Court should overrule the officer Defendants' objections to specific paragraphs from former Warden Ron McAndrew's declaration for three reasons. First, the Court should evaluate the scope of Warden McAndrew's review, as he is a retained expert, so the facts he reviewed are properly before the Court. *See* FED. R. EVID. 702(b). Second, even if Harris County did not direct its officers to obey the constitution, the officers were obliged not to use excessive force— Warden McAndrew's analysis of how they violated Kenneth Lucas' rights is squarely relevant to each officer. Finally, Warden McAndrew's own experiences with use of force incidents and equipment is outside the jury (and the Court's) experience, so he can properly offer his opinions on helmets and debriefing after a use of force, even if he contradicts the officers' opinions.

First, as an expert witness, Warden McAndrew is obliged to explain the basis for his opinions, including facts and evidence he reviewed that were not known to the individual Defendants at the time they killed Lucas. *See* FED. R. EVID. 702(b). That he considered sufficient

facts *should* affect the Court's and jury's evaluation of his opinions—it would hamper, not aid, the Court to ignore portions of Warden McAndrew's underlying reasoning. Accordingly, the Court should reject the officer Defendants' objections to Warden McAndrew's (correct) recitation of facts about Lucas and Harris County. *See* Doc. 193, pp. 20–21, ¶¶ a–c.

Moreover, the underlying facts of Lucas' arrest and medical problems are directly pertinent to the officer Defendants' misconduct. The fact that Lucas merely missed a visitation deadline and had been suffering from Xanax withdrawal could have been easily retrieved by the officer Defendants had they chosen to look.[7] Warden McAndrew must be able to explain his consideration of this information that Defendants could have obtained, because it establishes the consequences of the Defendants' failure to "consult[] the infirmary" or to evaluate whether Lucas' behavior was expected based on his history.[8] Had Defendants consulted with the infirmary, investigated Lucas' behavior further, or at least had a medical staff person present, as Warden McAndrew opines they should have, Defendants would have had that much more reason to realize the lack of exigency and that his ailments required additional precautions to ensure his safety. Thus, the Court should consider the full context provided by Warden McAndrew's report: The officer Defendants should have realized that what they were doing was dangerous to Lucas, and, had they taken any of the steps Warden McAndrew suggests, they could have saved his life.

Second, Warden McAndrew's opinions that the force used was excessive to the need and that more could have been done to prevent this tragedy are obviously directly pertinent to the officer Defendants. Doc. 175-27, Ex. 24, pp. 8–9. The officer Defendants seek to exclude these

---

[7] Doc. 175, Ex. 5 (Anderson dep.) at 56:14–57:4; Ex. 11 (Kneitz dep.) at 57:13–15; Ex. 9 (Green dep.) at 14:1–3; Ex. 8 (Leveston dep.) at 26:18–22; Doc. 175, Ex. 16 (Cohen rep.) at §§ 3–4, 10–11, 13, 23–24. 44(b); Doc. 175, Ex. 17 (O'Pry dep.) at 156:24–157:5.

[8] Doc. 175, Ex. 24, p. 9.

opinions because, they argue, someone else told them to remove Lucas from his cell by force and it is not their job to question that decision. Doc. 193, pp. 20–21. The Court should reject Defendants' attempt to deflect blame for their own deliberate indifference, and Plaintiffs refer to the body of the response to the motions for summary judgment. *See* Doc. 175, pp. 84–93. In short, the officer Defendants each stood outside Lucas' cell and could see he was not a danger to anyone before they decided to enter and brutally extract him. *See* Doc. 175-4, Ex. 2-A, 3 min., 30 s–4 min., 49 s. The officer Defendants could likewise see Lucas was totally under their control when he was shackled. *See, e.g.*, *id.* at 10 min.; Doc. 175-13, Ex. 10 (Thomas dep.) at 47:23–48:3. Nothing would have prevented the officers from speaking up, investigating Lucas' situation further, calling the infirmary, asking their supervisor to call the infirmary, or simply refusing to engage in an obviously dangerous practice. "That [each officer] was blindly following a blanket procedure does not excuse [his] violation of a clearly established constitutional right." *Hancock v. Baker*, 263 F. App'x 416, 419 (5th Cir. 2008); *see also O'Rourke v. Hayes*, 378 F.3d 1201, 1210 (11th Cir. 2004).

Finally, Warden McAndrew's experience with similar helmets to those the officer Defendants used when they killed Lucas is relevant—and it would be relevant whether or not he contradicted some of the officers about the helmets' functionality. The Court and the jury will have to decide how much the helmets impair hearing: Warden McAndrew can testify from his experience that they do not. *See* Doc. 175-27, Ex. 24, p. 10, n.2. That his experience conflicts with officers' testimony does not transform his past experience into a credibility determination (and his declaration explicitly defers to the jury to resolve that issue).

Likewise, Warden McAndrew's comments upon how the officers reacted to, and were counseled by the County regarding, Lucas' death are born of his experience. He does not say the

officers are not credible, he says their actions and testimony are consistent with a lack of concern about the probability that *they killed a person*. Doc. 175-27, Ex. 24, p. 11. Warden McAndrew is more than competent to testify about how a reasonable officer or jail policymaker should behave following a fatal use of force incident. His conclusion that the Defendants' actions and statements do not meet those expectations is relevant and admissible.

For the foregoing reasons, the Court should overrule the officer Defendants' objections to Warden McAndrew's declaration.

### D.    THE CAPTIONS ON THE EXTRACTION VIDEO ARE ADMISSIBLE.

The Court should consider Exhibit 2-A, the video of Lucas' extraction and death that incorporates a transcript of what the decedent and Defendants say in the raw video, separately filed as Exhibit 2-B. Docs. 175, 180, 181, 182. Exhibit 2-A is admissible for all purposes given the standard set forth in Federal Rule of Civil Procedure 56(c)(2). Alternatively, Exhibit 2-A is properly before the Court as a demonstrative exhibit or pedagogical aid pursuant to Federal Rule of Evidence 611(a) and advisory committee notes accompanying the rule. Either way, the Court should deny Defendants' motion to strike and overrule their objections to Exhibit 2-A.

The captioned video, Exhibit 2-A, assists the Court's review of how a reasonable officer would act and how the officers here failed to react, even to Lucas' repeated pleas that "I can't breathe." **Plaintiffs also attached the raw version of the video as Exhibit 2-B, and citations to Exhibit 2-A refer to the same portions of Exhibit 2-B.** Docs. 181, 182. Defendants do not dispute the authenticity or admissibility of Exhibit 2-B. Instead, Defendants object to Exhibit 2-A because "[t]he captions force the viewer to read what is being said in the video . . . and takes the focus off what happened." But what "happened" necessarily includes "what is being said in the video" given the importance of Kenneth's pleas for help and Defendants' responses to those

pleas. Under well-settled law, the Court—and later the jury—may consider the transcriptions as well as the raw video footage.

Two rules demonstrate that this Court should consider Exhibit 2-A in disposing of Defendants' summary judgment motions. First, Federal Rule of Civil Procedure 56(c)(2) allows the Plaintiffs to rely on Exhibit 2-A for summary judgment purposes if Plaintiffs can demonstrate that the evidence is admissible as-is <u>or</u> that Plaintiffs can produce the evidence in admissible form. *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017), *as revised* (July 5, 2017); FED. R. CIV. P. 56(c)(2), 2010 advisory committee notes. Under well-settled law in the Fifth Circuit, Plaintiffs can easily produce Exhibit 2-A in admissible form:

> Transcripts may be admitted into evidence in situations where portions of a recording are somewhat inaudible. *United States v. Onori*, 535 F.2d 938, 947 (5th Cir.1976). It is within a court's discretion to admit a transcript to assist a jury that listens to a recording. *Id.* A transcript is substantive evidence that aids the jury in determining a recording's content and meaning. *United States v. Valencia*, 957 F.2d 1189, 1194 (5th Cir.1992). In *Onori,* this court outlined the preferred procedure for the introduction of transcripts. 535 F.2d at 948–49. We prefer that the two sides devise a stipulated transcript. *Id.* at 948. If the parties do not create such a joint transcript, then the jury may consider as a matter of fact the accuracy of two different transcripts. *Id.* at 948–49. "[O]nce we have concluded that the defendants could have challenged specific portions of the government's transcript or prepared an alternative version, it follows that they cannot be heard to complain on appeal because they failed to take advantage of their trial opportunity." *United States v. Wilson*, 578 F.2d 67, 70 (5th Cir. 1978). . . .
>
> Chaney relies on the Sixth Circuit's decision, *United States v. Robinson,* 707 F.2d 872, 879 (6th Cir. 1983), to generally object to admission of the transcript. . . . This court, however, has taken a different approach, ruling that "it is unnecessary for the trial court to decide whether a transcript is accurate before that transcript is given to the jury, so long as each side to the dispute is given an opportunity to submit a transcript containing its version of a conversation." *Onori,* 535 F.2d at 948.

*United States v. Chaney*, 299 Fed. App'x. 447, 453–54 (5th Cir. 2008). In *Chaney*, the defendant had been arrested for selling methamphetamine. *Id.* at 448. Evidence submitted by the prosecution included recordings of drug sales for which "the government and its witnesses had

prepared the transcript." *Id.* at 449, 450. Before the transcripts were "admitted into evidence," the court instructed the jury that the recordings were the "principal evidence of what the transactions were." *Id.* at 449. "When the government requested to provide the transcripts to the jury," the trial court obliged but further instructed the jury to determine the accuracy of the transcripts. *Id.* at 449–451. Even though the prosecution subsequently abandoned the video altogether and relied primarily on the transcript, the Fifth Circuit held that the transcripts were admissible because a government witness testified that the transcripts were "fair and accurate" and the defense had equal opportunity to prepare a "counter-transcript." *Id.* at 450, 451-52, 454-55; *see also United States v. Booker*, 334 F.3d 406, 412 (5th Cir. 2003) (where testimony affirmed accuracy of transcript and district court "instructed the jury to disregard the transcript if it did not accurately reflect the audio recording," the Fifth Circuit approved admission of the transcript).

Here, certain portions of the raw video attached as Exhibit 2-B are difficult to understand, so a transcript would certainly assist the jury and—for summary judgment purposes—the Court. Further, Plaintiffs anticipate producing a witness at trial who can authenticate the transcript and attest to its accuracy. Plaintiffs are also hopeful that the parties can stipulate to the accuracy of a jointly-produced transcript for at least the vast majority of the video attached as Exhibit 2-B. Even if the parties cannot stipulate to the accuracy of a single transcript, Defendants will have the same opportunity to provide a transcript as the Plaintiffs, and the jury will decide which transcript is accurate. Accordingly, Exhibit 2-A will be produced in admissible form at trial, rendering it admissible for summary judgment purposes. *See* FED. R. CIV. P. 56(c)(2), 2010 advisory committee notes ("The objection functions much as an objection at trial, adjusted for

the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated.").

Alternatively, the Court should rely on Exhibit 2-A as a demonstrative exhibit or pedagogical device regardless of the exhibit's admissibility for other purposes. Under Federal Rule of Evidence 611(a), the court should control the presentation of evidence in a manner designed to reveal the truth. Rule 611(a) applies to summary judgment and permits the court to allow the use of demonstrative evidence. *BP Expl. & Prod. Inc. v. Cashman Equip. Corp.*, No. H-13-3046, 2016 WL 1387907, at *8 n.13, *12, *16 (S.D. Tex. Apr. 8, 2016) (applying rule to motion to strike summary judgment evidence and denying motion). The Fifth Circuit has repeatedly permitted the use of transcripts as demonstrative aids to help the fact-finder understand recordings. *United States v. Ruppel*, 666 F.2d 261, 271–72 (5th Cir. 1982) (approving district court's decision to "allow[] the jury to follow a Government-prepared transcript as it listened to the tape" of a phone conversation involving defendant); *United States v. Garcia*, 334 Fed. App'x 609, 614–15 (5th Cir. 2009) ("[T]his and other circuits approve the use of such transcripts as demonstrative evidence that 'like other evidence, may be admitted for a limited purpose only,' *viz.*, the limited purpose of aiding the jury in understanding the recording. . . ."); *United States v. Thompson*, 130 F.3d 676, 684 (5th Cir. 1997) ("The court did not abuse its discretion by admitting into evidence the enhanced tapes and the accompanying transcripts."). Because the transcript incorporated by Exhibit 2-A will help the Court understand the evidence, the Court should consider the transcript in its disposition of Defendants' summary judgment motions.

Citing Federal Rules of Civil Procedure 26(a)(1)(A)(ii) and 37(c)(1), Defendants include a throw-in argument that Exhibit 2-A should be excluded because it was not produced earlier by

Plaintiffs. But Rule 26(e) merely requires "timely" supplementation of disclosures, and Plaintiffs finalized Exhibit 2-A just days before attaching the exhibit to their summary judgment response. Thus, Plaintiffs' production of Exhibit 2-A was timely, and any failure to produce Exhibit 2-A before filing their summary judgment response was substantially justified. *See* FED. R. CIV. P. 26(e), 37(c)(1). Alternatively, Defendants can claim no prejudice. The transcript incorporated by Exhibit 2-A is not new evidence—it simply puts in print what the various parties say in the video. Further, Defendants possessed the video a year before they finally produced it to the Plaintiffs, so Defendants have had ample opportunity to create their own transcript. Defendants also had **two months** to address Exhibit 2-A in their reply briefs and to identify all of the transcript's alleged inaccuracies. Despite having all that time, Defendants can only allege that the transcript incorporated by Exhibit 2-A contains insignificant omissions. Because Plaintiffs produced Exhibit 2-A in a timely fashion and because Defendants can claim no prejudice, the Court should not strike Exhibit 2-A under Rule 37(a)(1).

Accordingly, the Court should overrule the objections and deny the motion to strike the captioned video.

### E.    COUNSEL'S DECLARATION AUTHENTICATING THE APPENDIX IS ADMISSIBLE.

The Court should not strike counsel's declaration identifying the documents in Plaintiffs' summary judgment appendix, as the declaration is an appropriate vehicle to support the (thus far uncontested) authenticity of other records in the appendix. That a party produced a document in discovery is a fact militating towards its authenticity. *See McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 562 (5th Cir. 1998). Moreover, deposition pages are admissible at the summary judgment stage. FED. R. CIV. P. 56(c)(1)(A). Counsel has highlighted deposition pages to assist the Court's review. *See* Doc. 175-1, p. 2, ¶ 3. Averring that no other modifications took

place in the documents submitted to the Court assists to establish these basic, predicate facts to show authenticity. *See United States v. Jimenez–Lopez*, 873 F.2d 769, 772 (5th Cir. 1989) ("Rule 901 … requires some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to be"). Defendants nonetheless move to strike counsel's declaration explaining these facts. Doc. 194, p. 11. Defendants contend with no evidence whatsoever that counsel has no personal knowledge of documents obtained and produced in discovery (or downloaded by counsel from the internet), even though discovery is obviously a lawyer-driven process. *Id*. Defendants offer only aimless bluster, whilst the declaration states it is made based upon personal knowledge. Doc. 175-1, p. 1, ¶ 1. Plaintiffs are dumbfounded by this logic and ask the Court to deny the motion to strike counsel's declaration identifying documents.

## F. THE OFFICER DEFENDANTS HAVE WAIVED THEIR OBJECTIONS TO DEPOSITION TESTIMONY BY FAILING TO EXPLAIN THEM.

The officer Defendants' objections to deposition testimony are not sufficiently argued and the Court should consider them waived. "Evidentiary objections must be specific." *United States v. Avants*, 367 F.3d 433, 445 (5th Cir. 2004). "This Court need not address boilerplate evidentiary objections that the parties themselves deem unworthy of development." *Amaretto Ranch Breedables v. Ozimales*, 907 F.Supp.2d 1080, 1081 (N.D. Cal. 2012).[9]

The Court should find the officers waived their objections for at least three reasons: First, the volume of objections is harassing, as Defendants have asserted 1,076 individual objections explained with no more than a few words. Second, the officers object indiscriminately to

---

[9] *See also Paske v. Fitzgerald*, No. CIV.A. H-12-2915, 2014 WL 1366552, at *5 (S.D. Tex. Apr. 7, 2014) (Weirlein, J.), *aff'd*, 785 F.3d 977 (5th Cir. 2015); *Tucker v. SAS Inst., Inc.*, 462 F. Supp. 2d 715, 722 (N.D. Tex. 2006) ("The court is not required to review large quanta of evidence to ferret out inadmissible statements."); *Anderson v. Dallas Cty., Texas*, No. 3:05-CV-1248-G, 2007 WL 1148994, at *4, nn. 2–3, 5 (N.D. Tex. Apr. 18, 2007), *aff'd*, 286 F. App'x 850 (5th Cir. 2008) (disregarding numerous nonspecific evidentiary objections).

essentially moot questions, including to countless questions that were re-asked without objection and questions that were not actually answered.

1. **The officer Defendants' 1,076, boilerplate objections prejudice Plaintiffs' ability to respond.**

Rather than explaining its objections, Defendants have provided the Court and Plaintiffs only a 16-page table of citations[10] with 1,076 generic objections such as "vague" or "calls for speculation." *See, e.g.*, Doc. 193, pp. 3–19.[11] The Court should not wade into this quagmire if the Defendants themselves are unwilling to do so. Instead, the Court should find that each objection is inadequately briefed and has been waived.

Due to this exceptionally burdensome motion practice, Plaintiffs cannot realistically respond fully, much less concisely. The officer Defendants assert 287 "vague" objections, 191 "argumentative" objections, 243 "speculation" objections, 41 "legal conclusion" objections, 12 "harassing" objections, 61 "asked and answered" objections, 60 objections to "inadequate predicate," 96 objections to mischaracterizing evidence or testimony, 24 objections to relevance, and more. *See* Doc. 193, pp. 3–19. In all, the officer Defendants ask the Court to rule on 1,076 objections to over 600 questions—averaging more than one objection per page of the depositions they are trying to limit (their own). These objections waste counsel and the Court's time, as this strategy obscures whether any arguably inadmissible evidence actually is in the appendix. The Court should deem these generic objections waived even if Defendants should offer additional

---

[10] The citations are another impediment, as they are filled with typographical mistakes—for example, Officer Leveston's deposition is described as Exhibit 9. *See* Doc. 193, p. 12. It is exhibit 8. Elsewhere, the objections complain about two entire pages of Officer Gordon's testimony, as well as lines "13–28" of Officer Leveston's testimony, which only has lines 1–25. Doc. 193, pp. 8, 12, 13.

[11] The officer Defendants filed their objections four times. Docs. 190–193. Plaintiffs will cite to the last copy on file.

detail in reply briefs or oral argument. "Failure to raise an argument in a motion waives the argument; raising it for the first time in a reply memorandum is too late." *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 795, 811 (E.D. Tex. 2014).[12]

### 2. The officer Defendants have even objected to questions that were mooted by nonresponsive answers and curative questioning.

Further wasting time, many of the objections are moot, but Defendants ask the Court to rule on them anyway—evincing a robotic effort to overwhelm the Court and Plaintiffs with quantity over quality.

This line of questioning for Officer Leveston demonstrates how objections are mooted, with the objected-to question and answer in bold:

**Q.    Earlier one of your fellow officers, on the containment team, indicated that, yes, there was a time when deadly force could have appropriately been used and that was when he had the smoke detector.
Do you agree or disagree with that?**
MR. GAMBILL: Objection; inadequate predicate. Calls for speculation.
MR. TOLER: Join.
**A.    So I can't speak on somebody else's actions. I mean, I can only speak on mine. I can't speak on his thought process at the time.**
Q.    (By Mr. Wilson) Okay. What you're saying is at least from your perspective there was never a time when deadly force would have been justified?
A.    Not from my perspective. At the time of the incident no.

Doc. 175-11, Ex. 8, pp. 31:11–32:2. These objections are of vanishing importance for at least three reasons.[13] First, the officer Defendants have asserted both of these objections even though

---

[12] *See also see also Lewis*, 796 F.3d at 545 (5th Cir. 2015); *Flooring Sys., Inc., v. Chow*, No. 4:12–CV–475, 2013 WL 4674667, at *1, n.2 (E.D.Tex. Aug. 27, 2013); *Miles Bramwell USA, LLC v. Weight Watchers Int'l, Inc.*, No. 4:12–CV–292, 2013 WL 1797031, at *4 (E.D.Tex. Mar. 27, 2013); *Nearstar, Inc. v. Waggoner*, No. 4:09-cv-218, 2011 WL 817374, at *4 (E.D.Tex. Mar. 2, 2011); *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, No. 4:08–cv–243, 2009 WL 901128, at *2, n.1 (E.D.Tex. Mar. 30, 2009).

[13] And, as with virtually all the officers' objections, *see infra*, pp. 9–9, both objections are baseless on the merits: Leveston is a correctional officer on the scene and it is certainly within his expertise to say when he—not another officer—thought deadly force was appropriate. It is

they did not object to the follow up question rephrasing the objected-to question. *See* Doc. 193, p. 13 (referring to page 31). Second, in the above example, the deponent, Defendant Leveston, took the cue from the objections to refuse to answer, so no speculation or unfounded testimony could have been solicited by the original, objected-to question. Finally, this exchange is not even highlighted or cited by Plaintiffs' brief.

This pattern repeats throughout a huge portion of those objections. Of course, attorneys routinely rephrased objected-to questions to cure the perceived problem (whether or not the objection had a whiff of merit). *See, e.g.*, Doc. 175-9, Ex. 6, p. 10:3–20; Doc. 175-11, Ex. 8, p. 43:3–19, 46:14–20, 48:3–18, 86:7–16, 112:5–14, 134:9–19; Doc. 175-13, Ex. 10, pp. 54:19–55:10. Defendants' witnesses frequently took cues from the lawyers' objections, stating only that they could not speculate or assume anything after hearing the objection. *See, e.g.*, Doc. 175-11, Ex. 8, pp. 64:19–65:3, 71:14–19, 71:23–72:5, 72:9–21, 77:19–24, 80:13–24, 81:9–14, 84:3–20, 95:25–96:7, 97:13–98:1. Indeed, Defendants assert at least one objection to a question that was not answered at all. Doc. 175-11, Ex. 8, pp. 86:7–11 (question re-asked before being answered). And most of the objections are not to material cited in the briefing.

If Defendants do not care to thoughtfully articulate their objections—or even review the record to determine which objections were not re-asserted when a follow up question was asked—the Court should overrule them all.

### G. IN ADDITION, THE OFFICER DEFENDANTS' GENERIC DEPOSITION OBJECTIONS ARE BASELESS AND SHOULD BE OVERRULED.

Should the Court wade into the merits of the officer Defendants' deposition objections (though it should not), it will still find the objections sorely lacking.

The Court should overrule the objections as stated below. While Plaintiffs have

---

unclear what further predicate he could need.

endeavored to reprint a representative sample of the most common types of objected-to exchanges that are before the Court, for the sake of brevity and economy, and in light of Defendants' unwillingness to explain their position, the vast majority of Defendants' hundreds of objections are not reprinted or discussed individually.

A central part of why Defendants cannot explain their mountains of objections is that they do not actually matter for the purposes of Rule 56: objections to the weight of evidence "are not relevant at the summary judgment stage." *Nolen v. Corinthian Colleges, Inc.*, No. SA-07-CA-805-OG, 2009 WL 10700095, at *11 (W.D. Tex. Mar. 26, 2009), *report and recommendation adopted*, No. SA-07-CA-805-OG, 2009 WL 10700085 (W.D. Tex. Apr. 23, 2009) (overruling objections).

Each individual objection is misplaced and should be overruled as either meritless, moot, or both. To the extent the Court suggests another approach to this voluminous motion practice, Plaintiffs respectfully request that the Court advise how counsel should supplement.

1. **Defendants' abundant objections to "speculation," "calls for a legal conclusion," "inadequate predicate," and "calls for an expert opinion" are improper.**

The Court should deny Defendants any benefit from their routine overuse of objections to speculation, calling for a legal conclusion, inadequate predicate, and calling for an expert opinion in these depositions. Two flaws are characteristic of these objections: First, Defendant's personal beliefs—including of medical and correctional practices topics—are themselves properly before the Court, as Defendants contend subjective awareness is part of the deliberate indifference inquiry.[14] Second, each officer has lay experience and a correctional background. *See Daubert v.*

---

[14] *See, e.g.*, Leveston, Green, Bell, Thomas, and Kneitz Motion, Doc. 145, p. 14 ("Proof of deliberate indifference must rest on facts clearly evidencing the defendant's wanton actions."); Scott and Gordon's Motion, Doc. 150, p. 26 ("The deliberate indifference standard is a

*Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993) ("an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation"); FED. R. EVID. 701. The Court should overrule all of these generic objections as meritless.

For example, Defendants improperly object to the following inquiry of Defendant Riley Scott:[15]

Q.     (By Mr. Edwards) If the training that you received from Harris County turns out to be dangerous for an inmate and, as a consequence, causes an inmate to die, if that happened and you were following your training, then you would tell the jury, "look, I can't fault myself because I was following my training. I would place fault on the County for deficient or inadequate training." Right?

MS. HEDGE: Objection, argumentative, vague, calls for speculation.

MS. BAKER: Calls for a legal conclusion. You may answer.

A.     If something like that was to happen, yes.

Doc. 175, Ex. 6, p. 12:2–14. This testimony reveals that officer Scott's understanding of responsibility conflicts with the law—it is not the case that Scott will be excused for following his training. To the contrary, "since World War II, the 'just following orders' defense has not occupied a respected position in our jurisprudence, and officers in such cases may be held liable under § 1983 if there is a reason why any of them should question the validity of that order." *Kennedy v. City of Cincinnati*, 595 F.3d 327, 337 (6th Cir. 2010); *see also Hobart v. Estrada*, 582 F. App'x 348, 356–57 (5th Cir. 2014) (denying qualified immunity even though officer's "use of force was in compliance with department policy"). And, contrary to the objections, a reasonable correctional officer should know the substance of the law governing their conduct. *See, e.g.*, *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1002 n.12 (5th Cir. 2003) ("[I]f a right is clearly established enough to impart fair warning to officers, then their conduct in violating that right cannot be objectively reasonable."). Indeed, just as "one does not need a law degree to

---

subjective inquiry.").

[15] Defendant Riley Scott transitioned from the name Alicia Scott after the incident at issue.

determine what a loan is," a lay person can have an opinion on "fault." *In re Wells Fargo Wage & Hour Employment Practices Litig. (No. III)*, No. H-11-2266, 2012 WL 3308880, at *9 (S.D. Tex. Aug. 10, 2012) (Miller, J.). And the fact that a Defendant who routinely makes life and death decisions believes he can ignore his own responsibility is certainly relevant to the question of deliberate indifference. The Court (and ultimately the jury) should consider each Defendant's lay expertise, training, and views on their responsibilities. The fact that Officer Scott's expertise is fundamentally tainted, his training is lacking, and he shirks his responsibility for his actions is highly relevant and properly before the Court.

In another example, Defendant Kneitz testified as follows:

Q.    (By Mr. Edwards) Tell me when you should use hogtie restraints in the Harris County jail.
A.    Never.
Q.    Okay. Well, then, I heard you say you should never use hogtying restraints, right?
A.    Right.
**Q.    And I assume you understand that you should never use anything like hogtying because it's dangerous? Is that fair for me to assume?**
**MR. GAMBILL: Objection, vague, calls for speculation, inadequate predicate.**
**A.    Fair.**

Doc. 175, Ex. 11, p. 77:3–14. No further predicate is needed. Defendant Kneitz testified that he worked for Harris County for seven years, mostly as a correctional officer. *Id.* at pp. 12:16–13:11. This establishes his lay expertise to testify about the danger, or lack thereof, of hogtying, without speculation. He is also a Defendant, so his beliefs about dangerous practices are relevant without any predicate. And, of course, he does not need to speculate to describe his own understanding. Plaintiffs cannot imagine what Defendants consider vague about this question.

The disconnect is likewise apparent when Plaintiffs asked officers to evaluate their own conduct, as in Defendant Gordon's deposition:

Q.    What grade would you give your team if somebody heard Mr. Lucas say "I can't breathe" and didn't check on him?

MS. BAKER: Same objections.[16]

Q.      (By Mr. Edwards) And solve that problem?

MS. BAKER: Sorry. Same objections.

A.      I can't answer that with a yes or a no or an A or a B answer. If that happened and they didn't tell me or they didn't do anything to correct it, at least by the time we got to the clinic tell somebody, then I would have to give them a lower grade.

Q.      (By Mr. Edwards) Appreciate that. What grade would you give them? Would you give them a B for above average?

MS. HEDGE: Objection, vague and speculation.

Q.      (By Mr. Edwards) Would you give them a C for average?

MS. HEDGE: Same objection.

Q.      (By Mr. Edwards) Would you give them a D for below average? Would you give them an F for failing?

MS. HEDGE: Same objection.

MS. BAKER: Same objection. Go ahead.

A.      I would give them a B.

Q. (By Mr. Edwards) Let me get this straight. You would give someone a B, an above average grade, for deliberately ignoring someone saying "I can't breathe" and not taking steps to help that person?

MS. HEDGE: Objection, vague, speculation.

Q.      (By Mr. Edwards) You'd give them a B; is that true?

MS. HEDGE: Same objection.

MS. BAKER: Objection, argumentative. You may answer.

A.      I would give them a B.

Doc. 175-10, Ex. 7, pp. 72:14–73:13. As an initial matter, this questioning is not vague. The hypothetical is simply how the Defendant would evaluate his fellow officers if—consistent with the testimony of officers Leveston and Thomas[17]—they heard Kenneth Lucas say, "I can't breathe."  Defendant Gordon does not need to speculate to speak his mind, and his own views about whether this misconduct is acceptable are relevant to his own deliberate indifference and training. Moreover, he is clearly competent to give that opinion in light of his correctional experience. Also due to this direct relevance, the questions are not argumentative.

In one final example, what the officers actually know about medical risk is relevant to

---

[16] The previous objections were: "Objection, mischaracterizes the witness's testimony and object to the vagueness of the question." Doc. 175, p. 71:23–25. Obviously, the question does not incorporate or refer to any testimony, so they could not mischaracterize testimony, but Defendants nevertheless urge this objection. *See* Doc. 193, p. 9 (Page 72, lines 3–13).

[17] Doc. 175, Ex. 8, p. 45:22–24; Doc. 175, Ex. 10, p. 59:2–3.

their subjective deliberate indifference—so it cannot be that merely touching upon their understanding of medical science is objectionably speculative. Yet, Defendants assert countless absurd "speculation" objections to such questions, like this one in Defendant Thomas' deposition:

**Q.     Okay. If somebody can't breathe, what can happen to them?**
**A.     They can possibly --**
**MR. GAMBILL: Calls for speculation.**
**A.     They can possibly die.**
Q.     (By Mr. Wilson) Now, your attorney just said that calls for speculation. Do you think you are having to speculate to tell us that if somebody can't breathe, they can die? Is that -- is that something you have to speculate about, or do you think you know that?
A.     If you -- I believe if you can't breathe, yeah, you possibly could have a serious bodily injury.
Q.     Yeah. Well, actually if you can't breathe long enough, you are -- what's going to happen to you?
A.     You are probably going to possibly die.
Q.     Well, it's not probably or possibly. If you can't breathe for long enough, what's going to happen to you?
A.     You die.

Doc. 175-13, Ex. 10, p. 93:6–23. Even though the attorney defending the deposition apparently thought better of the objection when the question was repeated, Defendants ask the Court to rule on it, and countless others like it, nonetheless. *See* Doc. 193, p. 16 (Page 93, lines 6–10); *see also* Doc. 175-14, Ex. 11, p. 41:16–25 (same objections to the same questions of Defendant Kneitz). It should go without saying that these officers—indeed, any human, is competent to explain what can happen to a person if they can't breathe, and does not need to speculate.

The same deficiencies apply to every objection to "speculation," "call for legal conclusion," "inadequate predicate," and "call for expert opinion," as Plaintiffs' questions properly target subjects within the correctional officers' expertise, training, and relevant subjective views. The Court should overrule these objections.

**2. Defendants' objections to "vague" in particular are so incomprehensible that they are meritless.**

Plaintiffs are particularly unable to respond to the 287 objections to "vague" questions. Upon reviewing the cited testimony, Plaintiffs struggle to imagine what Defendants could have possibly misunderstood about the pending questions.

For example, this line of questioning to Officer Gordon is unambiguous:

Q.  I mean, the fact is, he was -- you were taught that a hogtie position is where the ankles are bound behind your back, right?
A.  Uh-huh.
Q.  Is that a yes?
A.  The ankles.
Q.  Are bound behind the back is part of it, right?
A.  Right.
Q.  The hands are bound behind the back, right?
A.  Yes.
Q.  And then they are connected by something, some other device, right?
A.  Yes.
**Q.  The only thing missing in terms of Kenneth Lucas was there wasn't that -- that thing binding his hands to his feet, right?**
**MS. BAKER: Objection, vague. But you may answer.**
**A.  What we did was not hogtie.**
**Q.  (By Mr. Wilson) Let me -- let me ask you again. The only thing that wasn't a hogtie about this is there was not a -- some type of a mechanical device binding his hands to his feet, correct?**
**MS. BAKER: Objection, vague.**
**A.  Yes.**

Doc. 175-10, Ex. 7, pp. 47:1–48:1. Nothing about the objected-to questions is vague—the witness is being asked to define a hogtie position and apply that definition to his own experience. It is the Defendant's understanding of the term that is pertinent, because he himself testified that hogtying was forbidden. Doc. 175, p. 39:11–12 ("We're trained not to hogtie.").

In another example, Defendants objected to this simple question posed to Defendant Green:

Q.  Has anybody at Harris County told you that they were sorry for their actions with regards to Mr. Lucas?

MS. HEDGE: Objection, vague.
A.      No, sir.

Doc. 175-12, Ex. 9, p. 150:14–18. Again, Plaintiffs are not able to divine what confused Defendants about this question. As Defendants have opted to forego actually explaining their position, *see* Doc. 193, pp. 8, 15, these objections (and the 284 other "vague" objections) should be denied as meritless.

### 3.  Defendants' objections to "argumentative" are misplaced.

Likewise, Defendants' "argumentative" objections are meritless and incomprehensible. Defendants seem to assert the objection to testimony that displeases them. In any event, Defendants do not explain any of their 191 "argumentative" objections, making them about as impossible to decipher as the "vague" objections. This is sufficient reason to overrule them. *See, e.g.*, *Munn v. City of Ocean Springs, Mississippi*, No. 1:14CV428-LG-RHW, 2016 WL 2757758, at *4 (S.D. Miss. May 12, 2016), *reconsideration denied sub nom. Munn v. City of Ocean Springs*, No. 1:14CV428-LG-RHW, 2016 WL 3351062 (S.D. Miss. June 15, 2016) (overruling unexplained argumentative objections). Even if some questions in depositions were argumentative, there is no risk of prejudice at this stage, where the Court can discount any suggestions contained in counsel's questions and focus on the witness's testimony. *See, e.g.*, *Cisneros v. Napolitano*, No. CIVASA08-CV-0856OGNN, 2010 WL 1189915, at *1 (W.D. Tex. Mar. 25, 2010), *report and recommendation adopted*, No. SA-08-CA-856-OG, 2010 WL 11601324 (W.D. Tex. Apr. 21, 2010), *aff'd*, 406 F. App'x 926 (5th Cir. 2011) (overruling objections to "argumentative" summary judgment evidence). All of these groundless objections should be denied.

For example, in the following exchange with Defendant Kneitz:

Q.      Okay. From the point that he is handcuffed and shackled, would you agree that it

> would be absolutely off the charts unreasonable and unacceptable for any of the
> officers to employ deadly force against Mr. Lucas --
>
> MR. GAMBILL: Objection, calls for speculation, inadequate predicate.
>
> Q.      (By Mr. Edwards) -- based on exactly what you saw?
>
> MR. GAMBILL: Same objection.
>
> MS. BAKER: Join the objection.
>
> MS. HEDGE: It's argumentative.
>
> A.      Based on what he did, what Inmate Lucas did, we did not need deadly force after
> he was secured.

Doc. 175, Ex. 11, p. 71:13–24. As to "speculation," Defendant Kneitz was present for the use of

force against Lucas. Defendant Kneitz does not need to speculate to give his opinion on whether

deadly force was needed. Perhaps the Defendants asserted the question was "argumentative"

because it was posed in terms of what "would be absolutely off the charts unreasonable and

unacceptable." But this specificity is relevant. Defendants themselves assert that, "Deliberate

indifference is a stringent standard of fault, requiring proof that a government actor disregard a

known **or obvious** consequence of his action." Doc. 145, p. 30; Doc. 150, p. 27 (emphasis added,

internal quotation marks omitted). This line of questioning sought, and obtained, an admission

that it would be obvious to any reasonable correctional officer that deadly force was not

authorized once Lucas was handcuffed and shackled—foreclosing any suggestion that

Defendants could be entitled to qualified immunity for deliberately risking his life.

Accordingly, the Court should overrule these "argumentative" objections and the 190

other objections like them.

> ### 4.  Plaintiffs' questions about evidence and testimony do not state false facts—although the mistaken objections thereto certainly reflect facts and testimony Defendants disagree with.

The Court should overrule Defendants' numerous, misplaced objections to questions

referring to unfavorable evidence by incorrectly claiming each one "assumes" facts or

"misstates" testimony. Defendants' 96 assertions of these objections should be overruled—and if

anything the Court should direct its attention to these questions in its Rule 56 analysis, as they

identify disputes of material fact.

One egregious example is instructive, from Defendant Scott's deposition:

Q.     Do you realize that minutes, several minutes ago, you testified that it was okay to
       use force that would prevent someone from breathing? Do you realize that?
MS. BAKER: Object to relevance.
MS. HEDGE: And mischaracterizes the witness's testimony.
A.     Like I said, sir, we only use, or myself only use the amount of force necessary.
       Now, if the inmate itself said they were -- they couldn't breathe or we noticed that
       they could not breathe, then we would stop doing whatever was transpiring.

Doc. 175, Ex. 6, p. 18:5–16.

Contrary to the objection, Defendant Scott had earlier testified:

Q.     (By Mr. Edwards) You don't think it's using more force than is necessary if you
       do things that cause a person to be unable to breathe or have great difficulty
       breathing?
MS. BAKER: Objection, vague, assumes facts not in evidence and argumentative. And
       subject to the objections, you may answer, Deputy Scott.
A.     No, I do not.

Doc. 175-9, Ex. 6, p. 14:16–23.[18] The Defendant contradicting himself about whether or not it is

acceptable to prevent a person from breathing is certainly relevant, and Plaintiffs' challenging

the Defendant with his contradictory statement does not mischaracterize his testimony.

Similarly, questions posed to Defendant Bell did not assume facts:

Q.     Training people to not intervene and help --
A.     Uh-huh. (Witness answers affirmatively.)
Q.     -- when people are asking for help or telling me they can't breathe, training people
       not to intervene, would you agree with me that that can be a very dangerous
       practice if the person actually is having difficulty breathing?
MR. TOLER: Objection; inadequate predicate, assumes facts not in evidence.
Q.     (By Mr. Edwards) It can be dangerous?
A.     Then, yes.

---

[18] Although it should go without saying, as the objection is meritless, Defendants have re-
asserted the objections on page 14. Doc. 193, p. 3. The question on page 14 does not assume any
facts, so it cannot have assumed facts not in evidence. Plaintiffs are mystified by the "vague" and
"argumentative" objections.

Q.      Sure. Sure. Sure. Now, it seems -- it seems beyond a dangerous practice. It seems like an idiotic practice. Do you agree with that?

MR. TOLER: Objection --

MS. BAKER: Vague.

MR. TOLER: -- argumentative.

MR. GAMBILL: Inadequate predicate.

A.      Then it was.

Doc. 175-17, Ex. 14, pp. 22:20–23:14. This is a series of hypothetical questions, so they do not assume facts at all. And those hypotheticals match Harris County's extraction policy and practice, which admissible evidence shows enforced a "code of silence" despite the obvious danger to inmates like Lucas.[19] (Nor is there inadequate predicate, as Defendant Bell has years of experience working at Harris County in corrections, with two years experience in extractions by the time of his 2016 deposition. Doc. 175-17, Ex. 14, p. 16:18–17:1. Likewise, characterizing the practice as "idiotic" is not argumentative, as Plaintiffs need this specificity to prove it was so obviously dangerous that any reasonable policymaker or officer would know it was unlawful.)

In short, Defendants have not pointed to any actually incorrect descriptions of evidence underlying deposition questions, much less any that might have mislead the witness or that might mislead the Court. Where evidence might be mixed on a question—such as the Defendants' attempts to contradict their depositions by affidavit—that only shows a dispute of material fact that the Court must consider.

---

[19] *See, e.g.*, Doc. 175-7, Ex. 4 (Garcia dep.) at 150:22–152:17 (testifying he did not take issue with officers' decision to ignore Kenneth's statement that he could not breathe), 73:14–17, 180:11–181:14 (testifying he approved of disregarding detainee's statement that he cannot breathe so long as detainee "was not entirely incapacitated."); Doc. 175-9, Ex. 6 (Scott dep.) at 40:24–41:3 ("We're not medical personnel, so we can't dictate what goes on [in the clinic]."); Doc. 175-11, Ex. 8 (Leveston dep.) at 50:14–51:1 (Officer Defendants' decision to do nothing in response to Kenneth's crying out that he could not breathe was consistent with County policy and training); Doc. 175-14, Ex. 11 (Kneitz dep.) at 85:25–86:15 (testifying that, "based on [his] training," he did not believe he had to react to Kenneth's plea that he could not breathe once they arrived at the clinic); Doc. 175-17, Ex. 14 (Bell dep.) at 11:5–12:11, 15:22–16:7 ("Q. Had you heard [Kenneth] cry out . . . I can't breathe, you would have reacted, correct? . . . A. "I was trained—I'm trained—if I heard it, I was trained that I could not, you know, react to it . . . .").

## IV.    CONCLUSION

The Court should deny Defendants' motion to strike and overrule Defendants' objections in their entirety for the reasons stated above.

THE LANIER LAW FIRM, P.C.

By: /s/ Lawrence P. Wilson
W. MARK LANIER
State Bar No.: 11934600
S.D. Tex. No. 8461
wml@lanierlawfirm.com
Lawrence P. Wilson
State Bar No.: 21704100
S.D. Tex. No. 9217
larry.wilson@lanierlawfirm.com
Benjamin T. Major
State Bar No.: 24074639
S.D. Tex. No. 1503277
benjamin.major@lanierlawfirm.com
6810 FM 1960 West
Houston, Texas 77069
Telephone: (713) 659-5200
Telecopier: (713) 659-2204
*Attorneys in Charge for Plaintiffs Denise Collins, Kenneth Lucas, and Casandra Salcido, as Next Friend of Minor Children K.L. and C.L.*

EDWARDS LAW

The Haehnel Building
1101 E. 11th Street
Austin, Texas 78702
Tel.    512-623-7727
Fax.    512-623-7729

By:    /s/ Jeff Edwards
JEFF EDWARDS
State Bar No. 24014406
jeff@edwards-law.com
SCOTT MEDLOCK
State Bar No. 24044783
scott@edwards-law.com

*Attorneys in Charge for Plaintiff Deidra*
*McCarty, as Friend of Minor Children*
*K.J.L. and T.J.L*

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2018, a true and correct copy of the foregoing has been served in accordance with the Federal Rules of Civil Procedure on the following:

Roy W. Smith
roy.w.smith@live.com
Mickel Newton
mikenewtonjrlaw@aol.com
Attorneys at Law
2616 South Loop West, Suite 670
Houston, Texas 77054
(713) 759-9266
(713) 759-9412 – Fax
*Attorney in Charge for Plaintiff*
*Amber Lucas Individually and*
*In Her Capacity as*
*Representative of the Estate of*
*Kenneth Christopher Lucas,*
*Deceased.*

Edward J. Kroger
kroger@krogerlaw.com
Brian C. Campbell
campbell@krogerlaw.com
3100 Weslayan, Suite 300
Houston, Texas 77027
(713) 961-7952
(713) 961-7953 – Fax
*Attorneys for Defendants,*
*Laxman Sunder and Carrie O'Pry*

Vince Ryan
Harris County Attorney
Laura Beckman Hedge
Assistant County Attorney
laura.hedge@cao.hctx.net
Keith A. Toler
Assistant County Attorney
keith.toler@cao.hctx.net
1019 Congress, 15th Floor
Houston, Texas 77002
(713) 274-5137
(713) 755-8924 – Fax
*Attorneys for Defendant,*
*Harris County*

Mary E. Baker
mary.baker@cao.hctx.net
1019 Congress, 15th Floor
Houston, Texas 77002
(713) 274-5133
(713) 755-8924 – Fax
*Attorney for Defendants,*
*Deputy Alicia Scott and Deputy David Gordon*

F. Clinton Gambill, II
clinton.gambill@cao.hctx.net
1019 Congress, 15th Floor
Houston, Texas 77002
(713) 274-5136
(713) 755-8924 – Fax
*Attorney for Defendants,*
*Deputy Xavier Levingston, Officer Broderick Green, Officer Jesse Bell, Officer Morris Thomas, and Officer Adam Kneitz*

/s/ Jeff Edwards
Jeff Edwards