IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CASANDRA SALCIDO, AS NEXT FRIEND OF MINOR CHILDREN K.L. AND C.L., DENISE COLLINS, KENNETH LUCAS, AMBER LUCAS, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF KENNETH CHRISTOPHER LUCAS, DECEASED, AND DEIDRE MCCARTY, AS NEXT FRIEND OF MINOR CHILDREN K.J.L. AND T.J.L., | § § § § § § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-15-2155 |
| HARRIS COUNTY, TEXAS, DEPUTY DAVID GORDON, DEPUTY XAVIER LEVINGSTON, DETENTION OFFICER BRODERICK GREEN, DETENTION OFFICER ALICIA SCOTT, DETENTION OFFICER JESSE BELL, DETENTION OFFICER MORRIS THOMAS, AND DETENTION OFFICER ADAM KNEITZ, | § § § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs brought this action against defendants, Harris County, Texas, and nine Harris County Sheriff's Office ("HCSO") employees in their individual capacities: Deputy David Gordon ("Gordon"), Deputy Xavier Leveston ("Leveston"), Detention Officer Broderick Green ("Green"), Detention Officer Alicia (a/k/a Riley) Scott ("Scott"), Detention Officer Jesse Bell ("Bell"), Detention Officer Morris Thomas ("Thomas"), Detention Officer Adam Kneitz

("Kneitz"), Laxman Sunder, M.D. ("Sunder"), and Carrie O'Pry, LVN ("O'Pry"), under 42 U.S.C. § 1983 for violation of civil rights guaranteed by the Fourteenth Amendment to the United States Constitution, and for violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12131, and § 504 of the Rehabilitation Act ("RA"), 22 U.S.C. § 794. On September 28, 2018, the court issued a Memorandum Opinion and Order granting the motions for summary judgment filed by Dr. Sunder and Nurse O'Pry, and granting in part and denying in part the motions for summary judgment filed by the remaining seven individual defendants and by Harris County. Pending before the court are Harris County's Motion for Reconsideration (Docket Entry No. 210), Harris County's Amended Motion for Reconsideration (Docket Entry No. 211), Defendants' Motion for Stay (Docket Entry No. 220), and Plaintiffs' Response in Opposition to Defendants' Motion to Stay Litigation and Plaintiffs' Motion to Certify Defendants' Appeal as Frivolous ("Plaintiffs' Response and Motion to Certify Appeal as Frivolous") (Docket Entry No. 226). Also pending are Plaintiffs' Response to Defendant Harris County's Motion for Reconsideration ("Plaintiffs' Response") (Docket Entry No. 221), and Harris County's Reply in Support of Its Motion for Reconsideration ("Harris County's Reply") (Docket Entry No. 227), and Officer Defendants' Reply to Plaintiffs' Response to Defendants' Motion to Stay Litigation and Response to Plaintiffs' Motion to Certify Defendants' Appeal as Frivolous ("Officer Defendants' Reply") (Docket Entry No. 230).

-2-

Because the filing of Harris County's amended motion for reconsideration (Docket Entry No. 211), moots Harris County's motion for reconsideration (Docket Entry No. 210), Docket Entry No. 210 will be declared moot. For the reasons stated below Harris County's Amended Motion for Reconsideration will be denied, Defendants' Motion for Stay will be denied, and Plaintiff's Motion to Certify Defendants' Appeal as Frivolous will be granted.

## I. **Background**

This action arises out of a use of force at the Harris County Jail during which inmate Kenneth Christopher Lucas ("Lucas") died. The factual background is set forth at length in the September 28, 2018, Memorandum Opinion and Order (Docket Entry No. 207). In short, plaintiffs allege that Lucas, a pre-trial detainee in the Harris County Jail, died due to an excessive use of force exerted against him during a cell extraction and subsequent transfer to the jail clinic, when the officer defendants placed him face down on a gurney, held his shackled limbs behind his back in a hogtie position while an officer sat on top of him, and ignored his pleas for help and complaints that he could not breathe. Plaintiffs allege that the manner in which the defendants restrained Lucas and ignored his pleas for help was "by the book" for the Harris County Jail.[1]

---

[1]Plaintiffs' Response, Docket Entry No. 221, p. 4. <u>See also</u>
(continued...)

On July 28, 2015, Lucas's survivors filed this action (Docket Entry No. 1). On October 5, 2016, plaintiffs filed the live complaint, Plaintiffs' Fourth Amended Complaint (Docket Entry No. 77), asserting claims for violation of the ADA and the RA, and rights guaranteed by the Fourteenth Amendment to the United States Constitution made actionable by 42 U.S.C. § 1983.

In February of 2018 all of the defendants moved for summary judgment on all of plaintiffs' claims (Docket Entry Nos. 145-47, 150-52). On September 28, 2018, the court granted Harris County's motion for  summary judgment on plaintiffs' ADA and RA claims, but denied Harris County's motion for summary judgment on plaintiffs' § 1983 claims.[2]  The court granted Dr. Sunder's and Nurse O'Pry's motion for summary judgment on all of the claims asserted against them,[3] and granted the motions for summary judgment filed by the individual detention officer and deputy defendants as to the plaintiff's ADA and RA claims, but with one exception denied their motions on the plaintiffs' § 1983 claims.[4]  The exception was for

---

[1](...continued)
Plaintiffs' Fourth Amended Complaint, Docket Entry No. 77, pp. 4-26, ¶¶ 21-74. All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[2]See Memorandum Opinion and Order, Docket Entry No. 207, pp. 114-42 and 150.

[3]Id. at 103-114 and 150.

[4]Id. at 69-103 and 150.

-4-

defendant Kneitz for whom the court granted summary judgment on plaintiffs' § 1983 claims for use of excessive force.[5]

On October 12, 2018, and October 15, 2018, Harris County filed its original and amended motions for reconsideration, respectively. On October 26, 2018, the individual officer defendants filed their notice of appeal (Docket Entry No. 217), and on November 1, 2018, defendants filed their motion to stay, asserting: "The appeal will be focused on showing why the disputed issues of fact found by the Court are not material."[6]

On November 20, 2018, the plaintiffs filed their response in opposition to defendants' motion to stay, and their motion to certify defendants' appeal as frivolous (Docket Entry No. 226).

On December 10, 2018, the officer defendants file their reply to plaintiffs' response to their motion to stay, and a response to plaintiffs' motion to certify their appeal as frivolous (Docket Entry No. 230). Defendants argue that the court should not certify their the appeal as frivolous because it will address at least one question of law: "whether the [c]ourt erred in considering the defendants' conduct as a group or a unit for qualified immunity purposes."[7]

---

[5]Id. at 88-90.

[6]Defendants' Motion for Stay, Docket Entry No. 220, pp. 2-3.

[7]Officer Defendants' Reply, Docket Entry No. 230, p. 3 ¶ 6.

## II. **Harris County's Motion for Reconsideration**

Harris County's amended motion for reconsideration asks the court "to reconsider its Memorandum Opinion and Order and to grant summary judgment to Defendants on all Plaintiffs' claims and theories of liability."[8] Harris County argues that the court "either missed or conflated" the following "uncontested facts" that "should sway the Court's ultimate opinion:"[9]

> First, the uncontested cause of death was sudden cardiac arrest, not positional asphyxia. Yet, the analysis of the Court's Opinion assumes otherwise — as evidenced by the heavy reliance upon the "position" of Lucas and the 2 uttered instances of "I can't breathe." Second, even if the analysis was based on asphyxia, it is undisputed Lucas was not hogtied. The "basic hogtie position" adopted by the Plaintiffs and this Court is not a hogtie — but rather is a label that has been given to describe a position that significantly differs from a hogtie. This difference has important legal significance. Absent from the 2009 DOJ Letter is any reference to a "basic hogtie position." And, contrary to the Opinion, Sheriff Garcia did *not* testify that he had knowledge that putting someone in a "basic hogtie position" was dangerous and he did *not* testify that officers were trained to ignore cries for help until the inmate is "completely incapacitated" while in this position. [Cf. Doc. 207, p. 121, 125]. The Court's reliance on Plaintiffs' argument rather than the evidence sidesteps this critical point -- the policy or custom must be "adopted or maintained with objective deliberate indifference." There is simply no evidence to support deliberate indifference. Third, there is no discussion, no analysis and no conclusion that Harris County's policymaker was deliberately indifferent with regard to Plaintiffs' claim of denial of medical care — because there is no evidence to support such a liability finding. Finally, it is

---

[8]Harris County's Amended Motion for Reconsideration, Docket Entry No. 211, p. 9.

[9]Id. at 1.

-6-

axiomatic that it takes breath to talk. The two instances in which Lucas said he couldn't breath occurred during transport to the medical clinic and following his cussing at Dr. Sunders in the clinic.[10]

## A. Standard of Review

"[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration." St. Paul Mercury Insurance Company v. Fair Grounds Corporation, 123 F.3d 336, 339 (5th Cir. 1997). The court's September 28, 2018, Memorandum Opinion and Order was interlocutory, not final. See Moody v. Seaside Lanes, 825 F.2d 81, 85 & n.3 (5th Cir. 1987) (explaining that only the resolution of an entire adversary proceeding is "final"). Courts reconsider interlocutory orders under Rule 54(b), which provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of [a final judgment]."

> The standard of review for interlocutory decisions differs from the standards applied to final judgments under Federal Rules of Civil Procedure 59(e) and 60(b). . . . [R]econsideration of an interlocutory decision is available under the standard "as justice requires."

> "As justice requires" indicates concrete considerations of whether the court "has patently misunderstood a party, has made a decision outside the adversarial issues presented to the [c]ourt by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts

---

[10]Id. at 2.

> [has occurred] since the submission of the issue to the
> court. . . . [T]he "as justice requires" standard amounts
> to determining "whether reconsideration is necessary
> under the relevant circumstances." Nonetheless, the
> court's discretion under 54(b) is limited by the law of
> the case doctrine and "subject to the caveat that, where
> litigants have once battled for the court's decision,
> they should neither be required, nor without good reason,
> permitted, to battle for it again.

Judicial Watch v. Department of the Army, 466 F. Supp.2d 112, 123
(D.D.C. 2006) (citations omitted). See also Dos Santos v. Bell
Helicopter Textron, Inc. District, 651 F. Supp.2d 550, 553 (N.D.
Tex. 2009) ("whether to grant such a motion rests within the
discretion of the court").


## B. Analysis

Harris County seeks reconsideration of the court's denial of
its motion for summary judgment on the claims that plaintiffs have
asserted under 42 U.S.C. § 1983 for violation of rights guaranteed
by the Fourteenth Amendment by pointing to three allegedly
"uncontested facts that were either missed or conflated and that
should sway the Court's ultimate opinion."[11]  For the reasons set
forth below the court concludes that the facts to which plaintiffs
point are either contested or not dispositive.

---

[11]Id. at 1.

1.  <u>The Cause of Lucas' Death is a Genuine Issue of Material Fact for Trial</u>

Harris County argues that "the uncontested cause of death was sudden cardiac arrest, not positional asphyxia. Yet, the analysis of the Court's Opinion assumes otherwise — as evidenced by the heavy reliance upon the 'position' of Lucas and the 2 uttered instances of 'I can't breath.'"[12] Asserting that "the autopsy report conclusively established Lucas died of a sudden cardiac event, not of positional asphyxia,"[13] Harris County argues that

> [t]here is no testimony or evidence that policymaker Sheriff Garcia had knowledge that transporting Lucas to the medical clinic in a prone position — hogtie or otherwise — placed him at risk for a sudden heart attack. . . . Causation claims that link Lucas's sudden cardiac death to any alleged, disputed constitutional violation are wholly lacking. And there is no evidence to substantiate the claim that any policy or custom adopted or maintained with objective deliberate indifference caused sudden cardiac arrest.[14]

Plaintiffs respond that "expert testimony raises an issue of material fact: did Lucas's heart stop due to the physical restraint, or only other causes? Medical cause of death found in the autopsy does not resolve this question."[15] Plaintiffs argue that competent evidence shows that Lucas died from foreseeable dangerous physical restraint.[16]

---

[12]<u>Id.</u> at 2.

[13]<u>Id.</u>

[14]<u>Id.</u> at 2-3.

[15]Plaintiffs' Response, Docket Entry No. 221, p. 1.

[16]<u>Id.</u> at 6-9.

According to the autopsy report, Lucas died of "sudden cardiac death due to hypertensive and atherosclerotic cardiovascular disease during physical restraint."[17] Harris County's argument that Lucas's injury and death did not result from the use of force is based on Lucas' preexisting medical conditions. Harris County's argument fails to recognize that the eggshell skull rule is applicable in § 1983 excessive force cases. See Darden v. City of Fort Worth, Texas, 880 F.3d 722, 728 (5th Cir.), cert. denied, 139 S. Ct. 69 (2018) (citing Dunn v. Denk, 54 F.3d 248, 251 (5th Cir. 1995), rev'd on other grounds 79 F.3d 401 (5th Cir. 1996) (en banc)). In Darden the estate of a suspect who suffered a heart attack during his arrest in May of 2013 filed a § 1983 action against the two arresting officers, alleging use of excessive force. The district court granted the defendants' motion for summary judgment holding that the "plaintiff could not establish an excessive force claim because he cannot show that Darden's death 'resulted directly and only from the use of force that was clearly excessive to the need.'" Darden v. City of Fort Worth, Texas, No. 4:15-CV-221-A, 2016 WL 4257469, *6 (N.D. Tex. August 10, 2016). Recognizing that "[t]he district court's conclusion that the injury did not result directly and only from the use of force was essentially based on the fact that Darden had preexisting medical

---

[17]Autopsy Report, Exhibit 24 to Harris County's Amended Motion for Summary Judgment, Docket Entry No. 157-3, p. 2.

conditions that increased his risk of death during the incident,"
Darden, 880 F.3d at 728, the Fifth Circuit reversed, holding that
genuine issues of material fact precluded granting summary
judgment. Darden, 880 F.3d at 725 and 734. The Fifth Circuit
explained that

> [a]ccording to the eggshell skull rule, "a tortfeasor
> takes his victim as he finds him." . . . The eggshell
> skull rule is applicable in § 1983 excessive force cases.
> . . . Darden's preexisting medical conditions increased
> his risk of death during a struggle, and in that way,
> they contributed to his death. However, the evidence
> suggests that Darden would not have suffered a heart
> attack and died if the officers had not tased him, forced
> him onto his stomach, and applied pressure to his back.
> Indeed, the medical expert ultimately concluded that
> "Darden's manner of death should not have been ruled as
> Natural." Accordingly, the plaintiff can show that the
> use of force was the direct and only cause of Darden's
> death.

Id. at 728 (citations omitted).

Harris County argues that Darden is distinguishable because
unlike Lucas, the decedent in Darden "had done nothing to indicate
violence, and there was no suggestion of a threat."[18] But those
distinctions relate to whether the force used was objectively
reasonable, not to whether it caused the decedent's death. Like
the defendants in Darden, Harris County asserts that Lucas died
from cardiac arrest and therefore argues that plaintiffs cannot
show that his death resulted from the officer defendants' use of
force. Although Lucas' preexisting medical conditions may have

---

[18]Harris County's Reply, Docket Entry No. 227, p. 4 n.7.

increased his risk of death from cardiac arrest during restraint, and in that way, contributed to his death, as in Darden, there is evidence from plaintiffs' medical experts, Dr. Cohen and Dr. Hall, that Lucas would not have suffered a heart attack and died had the officer defendants not forced him onto his stomach and applied pressure to his limbs, chest, and back that impaired his ability to breathe. Dr. Cohen stated in his report that

> [c]orrectional uniformed and supervisory staff, during the cell extraction, transportation to the clinic and while in the clinic, restrained Kenneth Lucas in a manner which proximately caused his death. . . . The use of the hog-tie position on Mr. Lucas, an extremely agitated individual for an extended period of time, and their constant compression of his chest, continued after his last complaint of inability to breathe, contributed significantly to his death.[19]

Dr. Hall stated in her report that

> [i]n the cell extraction, Mr. Lucas was placed in what one officer described as a "hog tied position." This position meant that Mr. Lucas was handcuffed behind his back and was ankle shackled such that his ankles were also folded up behind him. Although there was not a metallic device connecting the ankles and wrists, the holding of the arms and legs in position effectively achieved the same thing as a hog tie with a metallic device. In addition to Mr. Lucas being in this position, he was placed face down on a gurney. For someone obese, this makes breathing more difficult. In [the] video, you can see the gut of Mr. Lucas bulging from the sides. This indicates that his gut was being pressed up into his diaphragm to the maximum extent and could go no further without rupturing internal organs. Such pressure on the diaphragm greatly constricts breathing. In addition to this, a guard was straddling his folded legs and that same guard was alternately putting his hands on

---

[19]Affidavit of Robert L. Cohen, M.D., ¶5, Exhibit 16 to Plaintiffs' Consolidated Response to Defendants' Motions for Summary Judgment, Docket Entry No. 175-19, pp. 17-18.

Mr. Lucas' feet or what appears to be Mr. Lucas['] back. Between the officer straddling the legs and putting pressure on feet and potentially back, breathing would have been further compromised. Finally, the video shows that for some inexplicable reason, the head of the gurney was tilted so that it angled upward into the face of Mr. Lucas. This would have made it more difficult for Mr. Lucas to turn his head from side to side and likely had the effect of somewhat constricting his air flow given that two of the officers maintaining pressure at his back as his hands were being restrained. That Mr. Lucas' breathing was compromised is confirmed by at least two statements of Mr. Lucas. One statement is clearly audible on the extraction video at approximately the 16:56 minute mark. At that point, Mr. Lucas says "I cannot breathe." A second statement is attested by Lt. Anderson in her deposition. She indicates that while she did not hear the statement by Mr. Lucas at the 16:56 minute mark of the video, she did hear him say he could not breathe prior to that point while they were in the elevator lobby. These two statements confirm that Mr. Lucas was not able to get adequate breaths.[20]

Moreover, the autopsy report characterized the manner of death as "[h]omicide."[21] Harris County acknowledges that "homicide" means "death at the hands of another."[22] The evidence cited by plaintiffs is sufficient to raise an issue of material fact for trial as to whether Lucas's sudden cardiac death was caused by his preexisting conditions or by the defendant officers' use of force.

---

[20]Report of Dr. Kris Hall ("Hall Report"), pp. 2-3, Exhibit 13 to Plaintiffs' Consolidated Response to Defendants' Motions for Summary Judgment, Docket Entry No. 175-16, pp. 3-4.

[21]Autopsy Report, Exhibit 24 to Harris County's Amended Motion for Summary Judgment, Docket Entry No. 157-3, p. 2.

[22]Harris County's Reply, Docket Entry No. 227, p. 4. See also Black's Law Dictionary, Ninth Edition, p. 802 (defining "homicide" as "killing of one person by another").

2. Whether Lucas was Hogtied is Not Dispositive

Asserting that "[t]here is legal significance to the difference between a hogtie and a 'basic hogtie' position,"[23] Harris County argues that

> even if the analysis was based on asphyxia, it is undisputed Lucas was not hogtied. The "basic hogtie position" adopted by the Plaintiffs and this Court is not a hogtie — but rather is a label that has been given to describe a position that significantly differs from a hogtie. This difference has important legal significance. . . . And, contrary to the Opinion, Sheriff Garcia did *not* testify that he had knowledge that putting someone in a "basic hogtie position" was dangerous and he did *not* testify that officers were trained to ignore cries for help until the inmate is "completely incapacitated" while in this position. [Cf. Doc. 207, p. 121, 125].[24]

Plaintiffs respond that "whatever method of force the County used and endorsed to kill Lucas, evidence shows it was obviously excessively dangerous, and well-known to County policymakers."[25]

Harris County argues that Lucas was not hogtied, and therefore that Lucas was not subjected to excessive force, and that Lucas's death was not reasonably foreseeable from the force used against him. But whether or not Lucas was hogtied is not dispositive of any of the claims asserted in this action. Virtually the same

---

[23]Harris County's Amended Motion for Reconsideration, Docket Entry No. 211, p. 3.

[24]Id. at 2.

[25]Plaintiffs' Response, Docket Entry No. 221, p. 1. See also id. at 9 (arguing that "hogtie or not, the physical restraint that Harris County used to kill Lucas was excessive, deadly force").

-14-

argument was raised by the individual officer defendants in their motions for summary judgment, and the court addressed it in the September 28, 2018, Memorandum Opinion and Order, as follows:

> [A]sserting that the pleadings specifically refer to placing Lucas in a "hogtie" and "hogtie position" as a use of excessive force and violation of his rights, the [officer] defendants all cite evidence showing that Lucas was not "hogtied," and argue that even if Lucas was "hogtied," his constitutionally protected rights were not violated because the Fifth Circuit has repeatedly held that a "hogtie" or four-point restraint does not constitute excessive force per se. See Deputy and Detention Officers' MSJ, Docket Entry No. 145, pp. 36-38 . . .; and Deputies' MSJ, Docket Entry No. 150, pp. 23-28 ¶¶ 26-36. The [officer] defendants' arguments based on the weakness of plaintiffs' evidence that Lucas was hogtied and the Fifth Circuit's failure to have held that use of such restraint represents a constitutional violation per se disregard plaintiffs' allegations and evidence that the [officer] defendants either subjected Lucas to the use of excessive force by exerting pressure on Lucas's limbs, back, and chest in a manner that impaired his ability to breathe, or observed but failed to prevent the use of such force against Lucas.[26]

The dispositive issues on the plaintiffs' excessive use of force claims are not whether Lucas was hogtied, but whether the force that the defendant officers purposely and knowingly used against Lucas caused "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." Darden, 880 F.3d at 727 (citing Cooper v. Brown, 844 F.3d 517, 522 (5th Cir. 2016), and Elizondo v. Green, 671 F.3d 506, 510 (5th Cir. 2012)). See also Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015) ("a

---

[26]Memorandum Opinion and Order, Docket Entry No. 207, p. 73 n. 144 (citations omitted).

pretrial detainee must show only that the force purposely or
knowingly used against him was objectively unreasonable"). Harris
County's contention that death was not reasonably foreseeable from
restraint that impaired Lucas' ability to breathe strains credulity
and is foreclosed by Fifth Circuit precedent. See Darden, 880 F.3d
at 728-33. See also Simpson v. Hines, 903 F.2d 400, 403 (5th Cir.
1990) (jail officers subduing pretrial detainee by sitting
"astraddle him" and applying pressure to his chest, while detainee
"screams and [made] repeated cries for mercy" denied qualified
immunity when detainee asphyxiated).

For the reasons set forth in the September 28, 2018,
Memorandum Opinion and Order,[27] the court concluded that

> [d]isputes of material fact as to whether the
> individually named [officer] defendants used force that
> was unreasonable under the circumstances include whether
> Lucas continued to resist once he was handcuffed,
> shackled, and placed face down on the gurney for
> transport to the jail clinic, and whether and to what
> extent each of the [officer] defendants applied pressure
> to Lucas's chest during the transport to the clinic. The
> court concludes that plaintiffs have cited summary
> judgment evidence capable of establishing that the
> [officer] defendants took the alleged actions against
> Lucas, that those actions were not objectively
> reasonable, and that the [officer] defendants had fair
> warning that the conduct at issue was constitutionally
> impermissible. The court therefore concludes that the
> plaintiffs have cited evidence capable of establishing
> that the [officer] defendants violated clearly
> established law of which all reasonable officers would
> have known.[28]

---

[27]Id. at 70-87.

[28]Id. at 87-88.

Harris County's amended motion for reconsideration fails either to address or to challenge the court's conclusions as to these genuine issues of material fact. Accordingly, the court concludes that whether Lucas was hogtied is not dispositive and does not warrant granting Harris County's motion for summary judgment.

### 3. Plaintiffs Presented Evidence Capable of Establishing Deliberate Indifference of Harris County's Policymaker

Asserting that "there is no discussion, no analysis and no conclusion that Harris County's policymaker was deliberately indifferent with regard to Plaintiffs' claim of denial of medical care — because there is no evidence to support such a liability finding,"[29] Harris County argues that "[t]he Opinion incorrectly relies upon misstated evidence by the Plaintiffs that Sheriff Garcia's testimony included 'ignoring Lucas's pleas for help until he was "entirely incapacitated."'"[30] Harris County argues

> [t]his was not his testimony — as shown in the very next line of Sheriff Garcia's deposition, he explained that what he meant was "there was no correlation of distress with what [Lucas] was saying to what [Lucas] was doing . . . [Lucas] is still being combative. [The officers] are still maintaining their training, they are still maintaining the control. They are still trying to keep

_____

[29]Harris County's Amended Motion for Reconsideration, Docket Entry No. 211, p. 2.

[30]Id. at 7 (quoting Memorandum Opinion and Order, Docket Entry No. 207, pp. 121, 122).

[Lucas] safe as well as themselves."[31]   Sheriff Garcia
further testified that it would *violate policy* if
officers ignored or were indifferent to a serious medical
need.[32]

Asserting that the court wrongly "determined the 'evidence cited by
Plaintiffs is sufficient to raise genuine issues of material fact'
as to the County's alleged failure to train,"[33] Harris County argues

it is incorrect to say Sheriff Garcia testified that he
"trained [the officer defendants] to ignore calls for
help and expressions of inability to breathe" or that he
failed to train them "about what to do should an inmate
have difficulty breathing."   To the contrary, his
testimony is that they should notify medical personnel.[34]

Plaintiffs respond that

the Sheriff plainly endorsed the misconduct captured on
video and described the very same reasoning that allowed
it to happen as Harris County policy. Even if the Court
believes the Sheriff that he incredibly believes a man
gasping "I can't breathe" is not a medical emergency *and*
that Lucas was being combative even as his eyes rolled
back in his head while he foamed at the mouth, a
policymaker's self-serving protests contrary to competent
evidence — such as the video — do not eliminate a fact

---

[31]Id. & n. 14 (citing Oral and Videotaped Deposition of Sheriff
Adrian Garcia ("Garcia Deposition"), 181:9-182:7, Exhibit 4 to
Plaintiffs' Consolidated Response, Docket Entry No. 175-7, pp. 95-
96).

[32]Id. & n. 15 (citing Garcia Deposition, 69:24-70:7, Exhibit
4 to Plaintiffs' Consolidated Response, Docket Entry No. 175-7, but
these pages of the Garcia Deposition are not included in the
exhibit cited).

[33]Id. at 8.

[34]Id. & n. 19 (quoting Garcia Deposition, p. 93:14-23, Exhibit
4 to Plaintiffs' Consolidated Response, Docket Entry No. 175-7,
p. 39).

issue, especially not when the standard is *objective* deliberate indifference.[35]

After watching the video of Lucas's cell extraction, transport to the clinic, and death, Sheriff Garcia testified that the defendant officers followed Harris County training and policies throughout the incident:

> Q. . . . [F]rom your perspective, even hearing what you have heard throughout this deposition about people not doing things when people say they can't breathe, you would still say, "look members of the jury, in my opinion, these officers were following the training and policies in place at" -- "at Harris County," fair?
>
> A. Yes.[36]

Even if Sheriff Garcia has testified as Harris County contends, i.e., that officers would violate Harris County policy if they ignored or were indifferent to a serious medical need, and that county officers are trained to notify medical personnel during a medical emergency, such testimony would neither negate nor contradict evidence that Harris County trained its officers to ignore calls for help and expressions of inability to breathe made by restrained detainees who were not "entirely incapacitated."

---

[35]Plaintiffs' Response, Docket Entry No. 221, pp. 1-2. See also id. at 11-12 (arguing that "the county's endorsement of its employees' mistreatment of Lucas is clear, showing the county denied medical care and failed to train").

[36]Garcia Deposition, pp. 211:22-212:4, Exhibit 4 to Plaintiffs' Consolidated Response, Docket Entry No. 175-7, Ex. 4, pp. 107-08. See also id. at 62:16-63:6, 66:2-67:19, 79:10-14, 180:11-182:7, Exhibit 4 to Plaintiffs' Consolidated Response, Docket Entry No. 175-7, pp. 32-33, 36-37, 42, 94-96.

Evidence to this effect is found not only in the deposition testimony of Sheriff Garcia, but also in the deposition testimony of officer defendants Leveston and Bell.

In pertinent Sheriff Garcia testified:

Q.    When you looked at the video and you saw that he
      said "I cannot breathe" and then you saw that they
      did absolutely nothing to address that, did you
      then go to them and say "folks, was there some
      reason you didn't do anything when he said 'I
      cannot breathe'"?

      Ms. Hedge: Objection, mischaracterizes the evidence.

A.    Around the same -- the same time period that
      Mr. Lucas says "I cannot breathe," I also saw him
      still trying to kick out with his legs, so to me he
      -- what he said is important, but what he was doing
      was just as significant because it demonstrates
      that he was not entirely incapacitated.

Q.    . . . And so -- so you needed him to be completely
      incapacitated before you would have been critical
      of them for not doing anything when he said "I
      cannot breathe"?

      MS. HEDGE: Objection, argumentative.

A.    The point being is that there was no correlation of
      distress with what he was saying to what he was
      doing.[37]

Defendant Leveston testified that after hearing Lucas say, "I can't breathe," he did nothing because in his opinion, and consistent with his training, "[i]f you're talking, you're breathing."[38]  Leveston also testified that the defendant officers

---

[37]Id. at 181:2-21, Exhibit 4 to Plaintiffs' Consolidated Response, Docket Entry No. 175-7, Ex. 4, p. 95.

[38]Oral and Videotaped Deposition of Xavier Leveston ("Leveston
(continued...)

"did everything based on our training,"[39] and that when they arrived in the clinic with Lucas, Leveston did not tell the doctor that Lucas had said that he could not breathe.[40]

Defendant Bell similarly testified that he followed his training "one hundred percent,"[41] and that had he heard Lucas complain that he couldn't breathe, he would not have reacted because he had been trained not to react and to continue holding Lucas's leg:

> Q.    Had you heard Mr. Lucas cry out --
>
> A.    Yes, sir.
>
> Q.    -- I can't breathe, you would have reacted, correct?
>
>                     . . .
>
> A.    I was trained -- I'm trained -- if I heard it, I was trained that I could not, you know, react to it because I was still focused on taking away from my part of the leg because I have to still hold him in his position.[42]

---

[38](...continued)
Deposition"), p. 47:24, Exhibit 8 to Plaintiffs' Consolidated Response, Docket Entry No. 175-11, p. 37. See also id. at 47:13-48:18, Exhibit 8 to Plaintiffs' Consolidated Response, Docket Entry No. 175-11, p. 37-38.

[39]Id. at 62:12, Exhibit 8 to Plaintiffs' Consolidated Response, Docket Entry No. 175-11, p. 46.

[40]Id. at 95:16-19, Exhibit 8 to Plaintiffs' Consolidated Response, Docket Entry No. 175-11, p. 66.

[41]Oral and Videotaped Deposition of Jesse Bell ("Bell Deposition"), p. 17:10-12, Exhibit 14 to Plaintiff's Consolidated Response, Docket Entry No. 175-17, p. 18.

[42]Id. at 15:22-16:7, Exhibit 14 to Plaintiff's Consolidated Response, Docket Entry No. 175-17, pp. 16-17.

Bell also testified:

> Q.  Okay.  So do I understand you correctly that the training from Harris County is that even if you were to hear -- if, okay? --
>
> A.  Yes.
>
> Q.  -- if you were to hear someone cry out, I can't breathe or I need help, that the person who's handling the leg shouldn't do anything other than maintain control over the leg?
>
> A.  Well, that was then -- that was that training -- the way we were trained then because you have five members.  That was then.  But under the new way we're being trained, we look for those signs.[43]

The video shows — and defendants do not dispute — that once Lucas was extracted from his cell, his legs were crossed, shackled, and folded at the knees, he was placed face down on the gurney, and subjected to pressure exerted by five of the defendant officers. Although Harris County argues that the defendants applied only the amount of force needed to restrain Lucas,[44] the court concluded in the September 28, 2018, Memorandum Opinion and Order that a reasonable jury could decide from viewing the video that Lucas had stopped resisting by the first time he told officers, "I can't breathe," and that each time Lucas moved, he was attempting to reposition his face from where the officers were pushing it into

_____

[43]Id. at 17:20-18:6, Exhibit 14 to Plaintiff's Consolidated Response, Docket Entry No. 175-17, pp. 18-19.

[44]See Harris County's Reply, Docket Entry No. 227, p. 2 ("officer[s] only applied force to Lucas' back and leg in reaction of Lucas' resistance — and then only as needed").

the gurney so that he could breathe.[45] Noticeably missing from evidence cited by Harris County is any testimony from Sheriff Garcia that Harris County officers were not trained to ignore complaints of an inability to breathe during restraint. That an inability to breathe is a serious medical need of which all reasonable officers would be aware is not subject to debate. See Simpson, 903 F.2d at 403. The testimony of Sheriff Garcia, Leveston, and Bell that the officer defendants were "maintaining their training" throughout the incident, including when they ignored Lucas's complaints that he could not breathe, is evidence from which a reasonable jury could conclude that Harris County trained its officers to ignore complaints of an inability to breathe during restraint, and that that training reflects deliberate indifference to a serious medical need.

### III. Defendants' Motion to Stay and Plaintiffs' Motion to Certify Defendants' Appeal as Frivolous

The officer defendants, Gordon, Leveston, Green, Scott, Bell, Thomas, and Kneitz, move the court to stay all further proceedings until the Fifth Circuit has resolved the appeal that they have taken from the court's denial of their motion for summary judgment based on the defense of qualified immunity.[46] These defendants argue that

---

[45]Memorandum Opinion and Order, Docket Entry No. 207, p. 84.

[46]Defendants' Motion to Stay, Docket Entry No. 220, pp. 1-2.

> [t]his Court has been divested of jurisdiction because
> [their] qualified immunity defense is meritorious. The
> appeal will be focused on showing why the disputed issues
> of fact found by the Court are not material. That is an
> issue of law. See <u>Manis v. Lawson</u>, 585 F.3d 839, 842
> (5th Cir. 2009).[47]

They argue that the court should not proceed to trial until the
Fifth Circuit determines whether they are all entitled to qualified
immunity on the plaintiffs' claims for excessive use of force and
failure to intervene, and whether Officers Scott, Bell, and Green,
are entitled to qualified immunity on plaintiffs' claims for denial
of medical care.[48]

Plaintiffs respond that the court should deny defendants'
motion for stay. Because the court denied the defendants' motions
for summary judgment based on qualified immunity due to disputed
issues of material fact, plaintiffs argue that interlocutory appeal
is improper, and the court should therefore certify the appeal to
the Fifth Circuit as frivolous.[49]

In reply the officer defendants not only reassert their
entitlement to qualified immunity on plaintiff's claims, but also
argue that their motion for stay should be granted because their
appeal will involve at least one question of law: Whether the court
erred by considering their conduct and entitlement to qualified

---

[47]<u>Id.</u> at 2-3 ¶ 3.

[48]<u>Id.</u> at 3 ¶¶ 4-5.

[49]Plaintiffs' Response and Motion to Certify Appeal as
Frivolous, Docket Entry No. 226, p. 1.

immunity as a group instead of separately as to each defendant, at least as to plaintiffs' claims for bystander liability and denial of medical care, because those claims have a subjective component.[50] Defendants also argue that their appeal of the unreasonable force and medical care claims is meritorious because the court erred by holding that their alleged conduct violated constitutional rights that were clearly established at the time of Lucas' death.[51]

## A.    Applicable Law and Standard of Review

Because the officer defendants invoked qualified immunity, plaintiffs had the burden to demonstrate "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" Id. at 2083 (quoting Anderson v. Creighton, 107 S. Ct. 3034, 3039 (1987)). The Fifth Circuit has explained that clearly established law is determined by "controlling authority — or a robust consensus

---

[50]Officer Defendants' Reply, Docket Entry No. 230, pp. 3-5 ¶¶ 6-9.

[51]Id. at 5-15 ¶¶ 10-30.

of persuasive authority — that defines the contours of the right in question with a high degree of particularity." Morgan v. Swanson, 659 F.3d 359, 371-72 (5th Cir. 2011) (en banc) (internal quotations omitted). Courts do not require "a case directly on point," but "existing precedent must have placed the statutory or constitutional question *beyond debate*." Id. at 372 (quoting al-Kidd, 131 S. Ct. at 2083). The central concern is whether the official has fair warning that his conduct violates a constitutional right. Id. at 372-73 (citing Hope v. Pelzer, 122 S. Ct. 2508, 2516 (2002)).

If the constitutional right was clearly established, the court "must decide whether the defendant's conduct was objectively reasonable." Gates v. Texas Department of Protective and Regulatory Services, 537 F.3d 404, 419 (5th Cir. 2008). The Fifth Circuit considers "an official's conduct to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the conduct violated the Constitution." Id. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" al-Kidd, 131 S. Ct. at 2085 (quoting Malley v. Briggs, 106 S. Ct. 1092, 1096 (1986)).

In cases where the defendants have not acted together, "'qualified immunity claims should be addressed separately' for each individual defendant.'" <u>Kitchen v. Dallas County, Texas</u>, 759 F.3d 468, 480 (5th Cir. 2014) (quoting <u>Atteberry v. Nocona General Hospital</u>, 430 F.3d 245, 253 (5th Cir. 2005), <u>abrogated on other grounds by</u> <u>Kingsley</u>, 135 S. Ct. at 2475). In such cases courts examine each officer's actions independently to determine whether he or she is entitled to qualified immunity. <u>Newman v. Guedry</u>, 703 F.3d 757, 762 (5th Cir. 2012), <u>cert. denied</u>, 134 S. Ct. 162 (2013) (citing <u>Meadours v. Ermel</u>, 483 F.3d 417, 421-22 (5th Cir. 2007)).

Because "[i]mmunity . . . is an entitlement to be free from the burdens of time-consuming pre-trial matters and the trial process itself," <u>Williams v. Brooks</u>, 996 F.2d 728, 730 n. 2 (5th Cir. 1993), "'[Immunity] is effectively lost' if a case is erroneously permitted to proceed at the district court level while an interlocutory appeal of a denial of immunity is pending." <u>Id.</u> (quoting <u>Mitchell v. Forsyth</u>, 105 S. Ct. 2806, 2815 (1985)). "[T]he traditional rule that the filing of a notice of appeal divests a district court of jurisdiction . . . applies with particular force in the immunity context." <u>Id.</u> (citation omitted). Nevertheless, "orders denying qualified immunity are immediately appealable only if they are predicated on conclusions of law, and not if a genuine issue of material fact precludes summary judgment on the question of qualified immunity." <u>Naylor v.</u>

State of Louisiana Department of Corrections, 123 F.3d 855, 857 (5th Cir. 1997) (per curiam). See also Melton v. Phillips, 875 F.3d 256, 261 (5th Cir. 2017) (en banc), cert. denied, 138 S. Ct. 1550 (2018) ("The denial of a motion for summary judgment based on qualified immunity is immediately appealable under the collateral order doctrine to the extent that it turns on an issue of law.").

Although courts are as a general matter, divested of jurisdiction while an interlocutory appeal of immunity is pending, such divestment is neither automatic nor absolute. See BancPass, Inc. v. Highway Toll Administration, L.L.C., 863 F.3d 391 (5th Cir. 2017). In BancPass, the Fifth Circuit reaffirmed its holding in United States v. Dunbar, 611 F.2d 985, 987 (5th Cir. 1980) (en banc), that "a district court may certify to the court of appeals that an interlocutory appeal of the denial of a . . . motion is frivolous and then proceed with trial rather than relinquish jurisdiction." 863 F.3d at 398. Reasoning that "[t]he divestiture of jurisdiction rule . . . would enable a criminal defendant to unilaterally obtain a trial continuance at [a]ny time prior to trial by merely filing a . . . motion, however frivolous, and appealing the trial court's denial thereof," id., the Bancpass court held that if an appeal is found to be frivolous, the filing of a notice of appeal by the defendant does not automatically divest the district court of jurisdiction over the case. Id. at 398-99 (quoting Dunbar, 611 F.2d at 988). The Fifth Circuit

specifically recognized that "a district court is permitted to maintain jurisdiction over an interlocutory appeal of an immunity denial after certifying that the appeal is frivolous or dilatory." Id. at 400. The court cautioned, however, that "this rule is a permissive one: the district court *may* keep jurisdiction, but is not required to do so," id., and that "[s]uch a power must be used with restraint." Id. (citations omitted). In other words, a district court must provide written certification and make an express finding of frivolousness in the immunity context in order for a court to not be deprived of jurisdiction. Id.

**B.    Application of the Law to the Facts**

1.   Defendants' Appeal from Denial of Qualified Immunity on Plaintiffs' Claims for Excessive Use of Force and Bystander Liability Are Frivolous

(a)   Issues of Material Fact as to Whether a Constitutional Violation Occurred Precluded the Court from Granting Defendants Qualified Immunity

Asserting that they do not conceded that they "effectively hogtied" Lucas, the officer defendants argue that even if they did, it was not clearly established on February 17, 2014, when the incident at issue occurred, that the restraint used on Lucas was unconstitutional. Accordingly, the officer defendants argue that they are entitled to qualified immunity on plaintiffs' claims for use of excessive force and failure to intervene (i.e., bystander

-29-

liability).[52] For the reasons stated in the September 28, 2018, Memorandum Opinion and Order (Docket Entry No. 207) at pp. 69-93, and in § II.B.2, above, the court concludes that whether the defendants hogtied or effectively hogtied Lucas is not dispositive of whether they violated a constitutional right that was clearly established when the incident at issue occurred. The dispositive issues are whether the force that the defendants used caused Lucas injury, was clearly excessive, and whether the excessiveness was clearly unreasonable. Darden, 880 F.3d at 728. See also Kingsley, 135 S. Ct. at 2473 ("a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable").

Factors courts consider when analyzing the objective reasonableness of a use of force against a pretrial detainee include

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Kingsley, 135 S. Ct. at 2473. After analyzing each of these factors, the court held that genuine issues of material fact precluded it from determining that the officers' use of force

---

[52]Defendants' Motion to Stay, Docket Entry No. 220, p. 3 ¶ 4.

against Lucas was objectively reasonable.[53] The officer defendants'
argue that they are entitled to qualified immunity because no
constitutional violation occurred, but this argument is premised on
their construction of facts that the court found to be in dispute,
e.g., defendants' contention that Lucas continued to struggle and
resist in a manner that made the use and level of force exerted
against him reasonable.[54] Issues of material fact that precluded
the court from granting defendants' motions for summary judgment on
plaintiffs' excessive force claims based on qualified immunity
include whether Lucas continued to resist once he was handcuffed,
shackled, and placed face down on the gurney, and whether and to
what extent each of the defendant officers applied pressure to
Lucas that impaired his ability to breathe. Issues of material
fact that precluded the court from granting defendants' motions for
summary judgment based on qualified immunity for plaintiffs'
failure to intervene claims include whether defendants who contend
otherwise actually heard Lucas plea for help and complain that he

---

[53]Memorandum Opinion and Order, Docket Entry No. 207, pp. 70-
87.

[54]See, e.g., Harris County's Reply, Docket Entry No. 227, p. 2
("officers only applied force to Lucas' back and leg in reaction to
Lucas' resistance — and then only as needed"); p. 5 ("Lucas has a
heart attack because his diseased heart gave out due to his
exertion while resisting reasonable restraint during the
extraction, transport to the clinic, and then to Ben Taub
Hospital."); p. 9 ("The officers did the right thing under the
circumstances — try to get the combative Lucas to medical as soon
as possible using the least amount of force necessary under these
difficult circumstances.").

could not breathe.[55]  Defendants' contention that these fact issues

are not material is foreclosed by Fifth Circuit precedent.  See

Chacon v. Copeland, 577 F. App'x 355, 363 (5th Cir. 2014) (per

curiam) (finding dispute over whether a detainee was "struggling or

resisting" to be material as a matter of law).  See also Darden,

880 F.3d at 330 (acknowledging that Darden allegedly told the

officers that he could not breathe, and holding that "the issue of

whether reasonable officers in this situation would have credited

the warnings from Darden . . . is a factual question that must be

decided by a jury").

> (b)  Defendants' Argument that Their Alleged Conduct Did
>      Not Violate Clearly Established Law Has No Merit

The officer defendants argue that their appeal is meritorious

because the allegedly violative nature of their alleged use of

unreasonable force was not clearly established.[56]  Citing Mullenix

v. Luna, 136 S. Ct. 305 (2015)(per curiam), and al-Kidd, 131 S. Ct.

at 2074, the officer defendants argue that "[t]he [c]ourt failed to

base its analysis in light of the specific context of the case, as

Supreme Court authority requires."[57]  Asserting that the court

identified the use of force at issue as "effectively hogtying Lucas

---

[55]Memorandum Opinion and Order, Docket Entry No. 207, pp. 87-
88.

[56]Defendant Officers' Reply, Docket Entry No. 230, p. 7 ¶ 13.

[57]Id.

and putting pressure on his legs, back and chest, which allegedly caused his inability to breath,"[58] and that the court cited <u>Simpson v. Hines</u>, 903 F.2d 400 (5th Cir. 1990), and <u>Preston v. Hicks</u>, 721 F. App'x 342, 345 (5th Cir. 2018)(per curiam), as authority for the proposition that the allegedly violative nature of their use of force was clearly established,[59] the officer defendants argue that neither <u>Preston</u> nor <u>Simpson</u> support the court's conclusion.

The officer defendants argue that <u>Preston</u> is inapposite because it involved a motion to dismiss and not motion for summary judgment, and because the plaintiff was a pro se litigant who was held to less stringent standards. The court did not cite <u>Preston</u> for its merits but, instead, for its recognition that "[o]nce a prisoner has been subdued, using gratuitous force on him is unreasonable." 721 F. App'x at 345 (citing <u>Cowart v. Erwin</u>, 837 F.3d 444, 454 (5th Cir. 2016). In <u>Cowart</u> a former prisoner filed suit against Dallas County Jail detention officers asserting, <u>inter alia</u>, claims for excessive use of force and bystander liability under § 1983. The jury returned a verdict for the plaintiff and the defendant detention officer appealed arguing, <u>inter alia</u>, that the court erred by denying him qualified immunity for the

---

[58]<u>Id.</u> at 5 ¶ 10 & n. 6 (citing Memorandum Opinion and Order, Docket Entry No. 207, p. 81).

[59]<u>Id.</u> at 7 ¶¶ 13-14. <u>See also</u> Memorandum Opinion and Order, Docket Entry No. 207, pp. 86-87.

plaintiff's § 1983 claims. 837 F.3d at 448-52. In pertinent part
the Fifth Circuit held:

> We have little difficulty concluding that in 2009, the
> time of the incident, it was well-established, in
> sufficiently similar situations, that officers may not
> "use gratuitous force against a prisoner who has already
> been subdued . . . [or] incapacitated. Reasonable
> officers had fair notice that such conduct under the
> circumstances violated Cowart's right to be free from
> excessive force.

Id. at 454-55 (citations omitted).

Moreover, there is a well-developed body of case law in the
Fifth Circuit specifically holding that the use of physical force
against a restrained, passively resisting or non-resisting subject
violates the constitution. See, e.g., Bush v. Strain, 513 F.3d
492, 501 (5th Cir. 2008) (objectively unreasonable to "forcefully
slam Bush's face into a vehicle while she was restrained and
subdued"); Williams v. Bramer, 180 F.3d 699, 704 (5th Cir. 1999),
(allegation of choking that was not in response to any resistance
or aggression by suspect in custody was "sufficient to assert a
constitutional violation."), clarified by, 186 F.3d 633, 634 (5th
Cir. 1999). The court's reference to Preston does not support a
meritorious appeal of the court's conclusion that the officer
defendants' alleged actions violated a clearly established
constitutional right of a pre-trial detainee to be free from the
use of excessive force.

Asserting that the facts of Simpson are distinguishable from
those of this case, the officer defendants argue that the Fifth

-34-

Circuit's holding in Simpson does not place the reasonableness of their allegedly violative actions beyond debate.[60]  The officer defendants argue that the facts of Simpson are distinguishable because there one of the defendants used a neck hold against the detainee and another sat on his chest while it is undisputed that none of the officer defendants in this case used a neck hold against Lucas or sat on his chest.[61]

In Simpson ten police officers entered the jail cell of a "volatile, drug-affected" detainee who refused to surrender his personal effects or be searched.  903 F.2d at 401.  One officer restrained the detainee's neck while others grabbed his arms and legs and brought him down to the ground.  Id. at 402.  An officer nicknamed "Beef" (due to his large size) sat on the detainee's chest as the other officers tried to handcuff him.  Unable to do so, they rolled the detainee on to his stomach and cuffed his hands and legs.  Id.  During this incident the detainee "was begging for help" and screaming.  Id. at 402.  The detainee was silent, however, for several minutes before the officers left his cell. Still cuffed, the detainee lay motionless on the floor of the cell as the officers exited the cell.  The detainee was then left on the floor over night, even though one of the defendants checked him twice and noticed that he had not moved.  The medical examiner's

---

[60]Officer Defendants' Reply, Docket Entry No. 230, p. 9.

[61]Id.

report stated that the detainee died due to asphyxiation minutes after the struggle, and a physician's report suggested that he may have died as a result of pressure placed on his chest. Id. at 403. The Fifth Circuit denied the officers' assertions of qualified immunity holding that these officers "reasonably should have known that in subduing and searching Simpson they maliciously used force which was grossly disproportionate to the need and was calculated to injure Simpson severely." Id.

Citing Simpson the Sixth Circuit has held it is "clearly established that putting substantial or significant pressure on a suspect's back while that suspect is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force." Champion v. Outlook Nashville, Inc., 380 F.3d 893, 903 (6th Cir. 2004), cert. denied, 125 S. Ct. 1837 (2005) (citing Simpson, 903 F.2d at 403). See also Martin v. City of Broadview Heights, 712 F.3d 951, 961 (6th Cir. 2013) (referencing Simpson in support of its holding that "[t]he prohibition against placing weight on Martin's body *after* he was handcuffed was clearly established in the Sixth Circuit as of August 2007"). Cases from this and other circuits have also held that substantially similar conduct violates clearly established law. See Darden, 880 F.3d at 733 (holding that officer who in May of 2013 forced an obese man onto his stomach, pushed his face to the floor, and pulled his hands behind his back, while others were yelling that he could not

breathe was not entitled to summary judgment based on qualified immunity); Drummond v. City of Anaheim, 343 F.3d 1052, 1062 (9th Cir. 2003) (holding that summary judgment based on qualified immunity was not available to officers who took into custody a mentally disturbed individual not wanted for any crime because "kneeling on the back and neck of a compliant detainee, and pressing the weight of two officers' bodies on him even after he complained that he was choking and in need of air violates clearly established law" and "reasonable officers would have been aware that such was the case"); Weigel v. Broad, 544 F.3d 1143, 1155 (10th Cir. 2008) ("If, however, the facts plaintiffs proffered are true and the jury draws the inferences most supportive of plaintiffs' position, then the law was clearly established that applying pressure to Mr. Weigel's upper back, once he was handcuffed and his legs restrained, was constitutionally unreasonable due to the significant risk of positional asphyxiation associated with such actions.").

The officer defendants contend that they had no reasonable warning that the restraint technique used on Lucas violated his constitutional rights because there was then no binding caselaw on the appropriateness of using an "effective hogtie" or a "basic hogtie." But lawfulness of force does not depend on the precise instrument used to apply it. Qualified immunity will not protect officers who apply excessive and unreasonable force merely because

their means of applying it are novel; the central concern is whether the officer defendants had fair warning that their conduct violated a constitutional right. See al-Kidd, 131 S. Ct. at 2083; Morgan, 659 F.3d at 372-73. The court concludes that Simpson, Darden, and other similar cases provided defendants fair warning of the violative nature of their alleged conduct, and that their argument to the contrary has no merit.

> (c) Defendants' Legal Argument that the Court Erred in Considering their Conduct as a Group for Purposes of Qualified Immunity on Plaintiffs' Excessive Force and Bystander Liability Claims Has No Merit

Citing Meadours, 483 F.3d at 421, the officer defendants argue that

> [i]n their [m]otion, the [p]laintiffs contend that qualified immunity was denied on factual rather than legal issues. They assume that no questions of law will be presented on appeal. The [p]laintiffs are mistaken. The first question to be addressed on appeal is whether the [c]ourt erred in considering the [o]fficer [d]efendants' conduct as a group or a unit for qualified immunity purposes. That is clearly an issue of law over which the Court of Appeals has jurisdiction on interlocutory appeal.[62]

The officer defendants cite Meadours for the observation that the Fifth Circuit has "consistently examined the actions of defendants individually in the qualified immunity context." Id.

---

[62]Officer Defendants' Reply, Docket Entry No. 230, p. 3 ¶ 6.

The court is well aware that personal civil liability for constitutional torts is based solely on individual conduct.[63] But as the Fifth Circuit observed in Meadours, 483 F.3d at 422 n. 3, "[s]eparate consideration does not require courts to conduct a separate analysis for each officer in those cases where their actions are materially indistinguishable, it merely requires them to *consider* each officer's actions." In this case it is undisputed that all of the officer defendants were present when the allegedly unconstitutional force was used against Lucas, and that five of them (Leveston, Green, Scott, Bell, and Thomas) acted as a unit. If plaintiffs' allegations of excessive force are true, then each of the officer defendants either participated in applying force to Lucas, or was present when the force was applied and failed to intervene. Under either theory, "the law in this circuit holds that any of the individual officers could be liable for a violation of § 1983 *if excessive force was in fact used.*" Khan v. Lee, Civil Action No. 07-7272, 2010 WL 11509283, at *3 (E.D. La. Dec. 2, 2010), aff'd, 683 F.3d 192 (5th Cir. 2012) (citing Hale, 45 F.3d at 919). In Hale the Fifth Circuit expressly recognized that other officers present when excessive force is used may also be liable when they fail to intervene. 45 F.3d 919 ("[A]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may

---

[63]Memorandum Opinion and Order, Docket Entry No. 207, p. 88.

be liable under section 1983."). For the reasons stated in § III.B.1(b), above, and in the September 28, 2018, Memorandum Opinion and Order at pages 87-88, the court has already concluded that whether excessive force was used turns on disputed issues of material fact to be determined at trial.

Although the seven officer defendants jointly filed only two motions for summary judgment and one joint reply,[64] the court conducted separate qualified immunity analyses for the two officer defendants (Gordon and Kneitz) who sought separate analysis on their entitled to qualified immunity on plaintiffs' claims for excessive use of force and bystander liability.[65] Based on this analysis the court granted Kneitz's motion for qualified immunity on plaintiffs' excessive force claims upon finding no evidence that he exerted any force against Lucas, but denied Kneitz's motion for qualified immunity on plaintiffs' bystander liability claims, and Gordon's summary judgment motion for qualified immunity on both claims due to genuine issues of material fact to be determined at trial.[66] The court therefore rejects as frivolous the officer defendants' legal argument that their interlocutory appeal will be meritorious because the court erred in considering them as a group for qualified immunity as to the excessive force and bystander liability claims.

---

[64]Id. at 89 & n. 174.

[65]Id. at 89-93.

[66]Id. at 88-90.

2.  Defendants' Appeal from Denial of Qualified Immunity on
    Plaintiffs' Denial of Medical Care Claims is Frivolous

Asserting that "[c]ounsel is not aware of any Supreme Court or Fifth Circuit precedent that would allow consideration of officer conduct as a unit when the issue is deliberate indifference to a serious medical need,"[67] defendants argue that Officers Scott, Bell, and Green, are entitled to qualified immunity on plaintiffs' claims for denial of medical care because the subjective component of deliberate indifference cannot be established without proof regarding each individual officer's awareness of the need.[68] These defendants also argue that their

> appeal of the denial of their qualified immunity on
> [p]laintiffs' deprivation of medical care claim is
> meritorious for three reasons. First, as discussed in
> Section A, supra., the Court failed to separately
> consider for each of the Officer Defendant' entitlement
> to qualified immunity on this claim. Second, the Court's
> holding that a genuine issue of material fact exists as
> to whether the Officer Defendants delayed Lucas's ability
> to receive medical care once inside the clinic
> contradicts its holding that former Defendants Dr. Sunder
> and Nurse O'Pry actively treated Kenneth Lucas from the
> moment he entered the jail clinic. Finally, it was not
> clearly established that the Officer Defendants could be
> held liable for any delay which allegedly occurred inside
> the Harris County Jail Medical Clinic.[69]

---

[67]Defendants' Motion for Stay, Docket Entry No. 220, p. 3.

[68]Id.

[69]Officer Defendants' Reply, Docket Entry No. 230, p. 10 ¶ 20.

(a) Defendants' Legal Argument that the Court Erred in Considering their Conduct as a Group for Purposes of Qualified Immunity on Plaintiffs' Denial of Medical Care Claims Has No Merit

For the reasons stated in the September 28, 2018, Memorandum Opinion and Order (Docket Entry No. 207) at pp. 93-103, the court concluded that plaintiffs' allegations that the defendants hindered the ability of medical professionals to assess and attend to Lucas's medical needs and watched Lucas die are capable of supporting § 1983 claims for denial of medical care, and that genuine issues of material fact precluded the court from granting the defendants' summary judgment motions based on qualified immunity. Contrary to defendants' argument, the court did not consider the subjective component of deliberate indifference as to the individual officers' as a unit but, instead, explained:

Because at least two of the [officer] defendants (Leveston and Thomas) admit that they heard Lucas say he could not breathe but did nothing, and because the video shows Lucas saying that he can't breathe and the [officer] defendants doing nothing, plaintiffs have cited sufficient evidence to raise genuine issues of material fact for trial as to whether the other [defendant officers] also heard Lucas complain that he could not breathe. Since, moreover, the inability to breathe signifies a serious need that is so apparent even laymen would recognize that care is required, the court concludes that plaintiffs have cited evidence from which a reasonable jury could conclude that the [officer] defendants were aware of facts from which an inference of the existence of an excessive risk to Lucas's health or safety could be drawn.[70]

The court also explained:

---

[70]Memorandum Opinion and Order, Docket Entry No. 207, pp. 100-01.

-42-

As evidence that the [officer] defendants actually drew an inference that an excessive risk of potential for harm existed, plaintiffs cite Gordon's and Scott's motion stating that if they had heard Lucas say he couldn't breathe or heard him gasp for air, they "each would have evaluated the validity of his claim and used their judgment and discretion to the extent of ordering the [other officer defendants] to release their hold and turn Inmate Lucas over immediately."  Plaintiffs cite the video which they argue, "clearly captured [Lucas's] lamentation, and an officer actually responded by telling him, "you relax, and you'll be able to breathe." . . . This evidence is sufficient to raise genuine issues of material fact as to whether the [officer] defendants actually drew an inference that Lucas's inability to breathe created an excessive risk of potential for harm yet intentionally said and did nothing, thereby delaying Lucas's ability to receive medical care needed to address the serious need caused by his inability to breathe.[71]

Contrary to defendants' argument the court held that the plaintiffs cited evidence capable of establishing deliberate indifference by Officers Scott, Bell, and Green because they were present at the scene in close proximity to Lucas — not because the court analyzed their alleged conduct as a unit.  Undisputed evidence shows that Scott was particularly close to Lucas perched on the gurney holding Lucas' shackled legs,[72] while Green and Bell were on the left side of the gurney controlling Lucas' left arm and leg, respectively.[73]  The court therefore rejects as frivolous the officer defendants' argument that the court erred by considering their actions as a group for qualified immunity as to the medical care claims.

---

[71]Id. at 101-102.

[72]Id. at 7-8 & n. 12.

[73]Id. at 7 & nn. 10-11.

(b) Issues of Material Fact Precluded the Court from Granting the Officer Defendants Qualified Immunity

For the reasons stated in the September 28, 2018, Memorandum Opinion and Order at pages 98-103, the court held that genuine issues of material fact precluded granting the officer defendants summary judgment on plaintiffs' claims for denial of medical care. This conclusion was based on the court's determination that the plaintiffs had cited evidence capable of establishing that the defendants were aware of facts from which an inference of excessive risk to Lucas' health or safety could be drawn, and that the defendants actually drew an inference that such potential for harm existed. Defendants argue that this holding is contradicted by the court's finding at page 110 of the Memorandum Opinion and Order that "[t]he undisputed facts evidenced by the video and the deposition testimony of plaintiffs' experts show that Dr. Sunder and Nurse O'Pry actively treated Lucas from the moment he entered the jail clinic." Defendants argue that "[b]ecause the [c]ourt has found that Dr. Sunder and Nurse O'Pry actively treated Kenneth Lucas 'from the moment he entered the jail clinic,' the [o]fficer [d]efendants cannot be held liable for the alleged delay in providing medical care as a matter of law."[74]

Defendants' argument has no merit. The fact that the doctor and nurse in the clinic actively treated Lucas from the moment he

---

[74]Officer Defendants' Reply, Docket Entry No. 230, p. 11 ¶ 21.

entered does not mean that the defendants did not act with deliberate indifference to Lucas' serious medical needs by failing to tell the medical professionals that Lucas had complained of being unable to breathe, failing to release Lucas' from his restraints upon arrival, and continuing to maintain control thereby impeding the medical professionals' ability to treat Lucas until Dr. Sunder realized that Lucas was not breathing and directed the officer defendants to release him and turn him over.

### (c) Defendants' Argument that Their Alleged Conduct Did Not Violate Clearly Established Law Has No Merit

Asserting that the Memorandum Opinion and Order "fails to consider the legal principle that once inside the Harris County Jail Medical Clinic, the Officer Defendants, who are undisputedly not medical professionals, are entitled to rely on the opinions of medical professionals,"[75] defendants argue that "[i]t was not clearly established that the [o]fficer [d]efendants had any constitutional obligation to provide medical care to Kenneth Lucas once inside the Harris County Jail Medical Clinic, a point which the Court did not address in the [o]pinion."[76]  In support of this argument defendants cite, inter alia, Lee v. Young, 533 F.3d 505, 511 (7th Cir. 2008), for its statement that "in determining the

---

[75]Id. at 13 ¶ 29.

[76]Id. at 15 ¶ 30.

best way to handle an inmate's medical needs, prison officials who are not medical professionals are entitled to rely on the opinions of medical professionals,"[77] and <u>Krout v. Goemmer</u>, 583 F.3d 557, 569 (8th Cir. 2009), for its statement "[t]hat a trained medical technician did not appreciate the risks attendant to Rylee's [a pretrial detainee] condition undermines an inference that the untrained officers obviously knew that Rylee was at serious risk to stop breathing or that his neck was broken."[78]  These and the other cases on which defendants rely are inapposite because the allegations and evidence in this case are not that the defendants relied on the treatment decisions of medical professionals but, instead, that they delayed, hindered, and impaired the medical professionals' ability to treat Lucas by failing to tell them that Lucas had complained of being unable to breathe, failing to release Lucas' from his restraints upon arrival to the clinic so that the medical professionals could access and assess him, and continued to restrain and assert pressure on Lucas until Dr. Sunder realized that Lucas was not breathing and ordered the defendants to release Lucas and turn him over.  The court concludes therefore that the defendants' argument that their alleged conduct did not violate Lucas' clearly established right to medical care has no merit.

---

[77]<u>Id.</u> at 13-14 ¶ 29.

[78]<u>Id.</u> at 14 ¶ 30.

## IV. **Conclusions and Order**

For the reasons stated on page 3, above, Harris County's Motion for Reconsideration, Docket Entry No. 210, is **MOOT**.

For the reasons stated in § II, above, Harris County's Amended Motion for Reconsideration, Docket Entry No. 211, is **DENIED**.

For the reasons stated in §§ II and III, above, the court concludes that issues of material fact exist as to whether the officer defendants are entitled to qualified immunity, and that there are no meritorious issues of law to be reviewed by the court of appeals. The court therefore **CERTIFIES** that defendants' interlocutory appeal is frivolous.

Accordingly, Defendants' Motion for Stay, Docket Entry No. 220, is **DENIED**, and Plaintiffs' Motion to Certify Defendants' Appeal as Frivolous, Docket Entry No. 226, is **GRANTED**.

**SIGNED** at Houston, Texas, on this 18th day of December, 2018.

SIM LAKE
UNITED STATES DISTRICT JUDGE